UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronnie MINSHEW, Defendant-Appellant.

No. 82–1004
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1982.

John W. Tottenham, III, Fort Worth, Tex. (court appointed), for defendant-appellant.

Gerhard Kleinschmidt, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

PER CURIAM:

A jury found that appellant Minshew, apparently undeterred by sad experience, committed mail fraud by filing for false income tax refunds from Florida State Prison. This is his appeal from that conviction.

According to the indictment appellant Minshew, codefendant Homer Wayne Mitchell, and codefendant Thomas Hodges were at all material times Florida convicts; while codefendant Karen Mitchell Lewis, Mitchell's sister, was living in Fort Worth, Texas. It went on to charge that the three prisoners caused United States individual income tax returns and W–2 forms to be filed, returns and forms which contained false representations of income earned and taxes withheld. The prisoners had executed powers of attorney giving Karen Lewis the right to negotiate checks for them and had caused claims for tax refunds to be mailed to the Internal Revenue Service, indicating that the refund checks should be mailed to them in care of Lewis. Lewis then cashed the checks by means of the powers of attorney and forwarded part of the proceeds to the three prisoners by

mail. It further alleged that appellant Minshew and Lewis caused an envelope addressed to Minshew to be delivered by mail to Lewis's address. Within was a treasury check for $1,420.00 payable to Minshew.

At trial, the government introduced a 1979 income tax return filed in Minshew's name (misspelled "Menshew"), claiming entitlement to a $1,420.00 refund and a 1979 W–2 form indicating that $1,865.00 had been withheld for federal income tax in connection with his employment by "Guilford Mills, Inc." in New York City. The government also introduced the $1,420.00 refund check and the power of attorney which Karen Lewis testified she used to cash the check. It was also shown that Minshew has been an inmate of the Florida prison system continuously since January 1974.

According to the testimony of Treasury Special Agent Richard Werstein, he interviewed appellant and other prisoners at Raiford Prison in Florida, showing appellant a copy of the 1979 tax return filed in his name. When asked if he actually worked at the place and earned the money as claimed, appellant told Werstein that it was "a false refund," and that Homer Mitchell had arranged for him and other prisoners to make such claims. Appellant stated that the refund check was to be sent to Karen Lewis and that he had sent her a power of attorney, asking her to negotiate the resulting check. Appellant told the agent that he had received about $1,100.00 which Lewis sent to a person in Jacksonville to bring to him. Appellant said that he was guilty and would so plead in exchange for a five-year sentence but that Lewis was unaware of the scheme. Mitchell also told the agent the details of the refund scheme, admitting that the Minshew return was part of it.

At trial, appellant testified that he gave Homer Mitchell his name and social security number when Mitchell told him he knew of an inmate who could file a request for a tax refund. He contended that he thought they were going to make a legitimate claim based on his earnings before he was imprisoned. Lewis also testified, admitting her participation but denying guilty knowledge or intent. Neither Mitchell nor Hodges took the stand. Minshew and others were convicted.

◼ Minshew first contends that the district court erred in denying his motion for a continuance to obtain potential defense witnesses. After the jury had been selected and sworn, appellant's counsel so moved in order to have thirteen fellow inmates brought to court from Raiford. Appellant conceded that these had no knowledge of the merits of the case, that he wanted them solely to attack the credibility of two potential prosecution witnesses, and that he did not want the thirteen if those two did not testify. The district court carried the motion with the case. The two potential witnesses did not testify and appellant's counsel never requested the thirteen again. Even had appellant preserved the point for review by obtaining a ruling on the motion, it is patent that he waived their appearance. The contention is meritless.

◼ Next Minshew contends that the district court erred in denying his motion for severance on grounds of misjoinder, made at the close of the prosecution's case. The record, however, shows that the following colloquy occurred at that time:

MR. TOTTENHAM [appellant's counsel]: Shall I reurge my Motion to Sever, your Honor?

THE COURT: No, I've carried it along all the way through. I never denied it.

MR. TOTTENHAM: Since we have carried it this far, I would just as soon you wait for a jury verdict.

The parties have stipulated that: "The trial court denied appellant's motion for severance immediately prior to sentencing appellant . . . ." A defendant cannot gamble on receiving a favorable verdict and, if disappointed, obtain a new, severed trial thereafter. The court disapproved this sort of "sandbagging" in *Wainwright v. Sykes*, 433 U.S. 72, 89–90, 97 S.Ct. 2497, 2507–2508, 53 L.Ed.2d 594 (1977). This contention also has been waived.

Minshew next asserts that the district court erred in giving the following jury instruction:

When a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of guilt. Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence. The questions of whether the evidence shows that a defendant actually made a voluntary explanation or statement and whether or not evidence as to such voluntary explanation or statement points to a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.

At the charge conference, appellant's counsel objected to this instruction on grounds that it was a prejudicial comment on the weight of the evidence, as containing the unreasonable implication that an innocent person does not usually find it necessary to fabricate a story establishing his innocence.

This instruction, however, cannot have prejudiced appellant because it did not bear on the facts of his case: his statements to the agent were *incriminating* ones, statements that he attempted to explain away at trial.[1]

We have carefully considered Minshew's additional contentions. None merit discussion. The judgment below is

AFFIRMED.

---

1. The instruction was applicable to Lewis, who made false statements when she was first interviewed. This is not her appeal.