**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Onesimo GALVAN, Jr.,**
**Defendant-Appellant.**

**No. 81–2381.**

United States Court of Appeals,
Fifth Circuit.

Dec. 1, 1982.

E. Dale Robertson, Brownsville, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, GEE and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

Appellant Onesimo Galvan, Jr. was jointly indicted with Hilario Rodriguez Reyes for conspiracy to import and importation of marihuana in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a) and 963, and for conspiracy to possess and possession of marihuana with intent to distribute it in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846. Reyes' indictment was dismissed following his successful motion to suppress certain evidence.[1] Galvan was tried alone and convicted by a jury on all four counts. His sole contention on appeal is that the trial judge erroneously denied his motion for judgment of acquittal at the close of the state's presentation of evidence. We agree that the evidence was insufficient to support Galvan's convictions and accordingly reverse the judgment.

On January 5, 1981, two customs officers were conducting surveillance in an area known as Midway near the Rio Grande City, Texas, border with Mexico. Based upon what one of the officers described as a "hunch," they stopped a four-wheel drive vehicle driven by Hilario Reyes. The "hunch" proved to be a good one, since five bags of marihuana were discovered in open view in the back of the vehicle. The officers arrested Reyes and seized the vehicle. In its glove compartment, they found a billfold and identification papers belonging to appellant Galvan.

On January 15, 1981, Galvan went to the port of entry at Rio Grande City to claim the seized vehicle and was directed to the district office of the Drug Enforcement Administration. He did not have an automobile title in his name, but presented a cash receipt indicating that the vehicle had been purchased by his wife on December 24,

---

1. Based upon several factors not relevant to the issue herein, the district court ruled that the officers' stop of Reyes was illegal under *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) and its progeny, and that the evidence against Reyes obtained thereby should be suppressed. Galvan's motion to suppress was denied because he did not claim a legitimate expectation of privacy sufficient to confer standing under *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Neither ruling is before us now, and we express no opinion on them.

1980. Galvan told officers at both locations that he had loaned the vehicle to Reyes so that Reyes could visit his mother, and that Galvan had no knowledge of Reyes' activities involving marihuana.

■ At trial, the state attempted to show solely by circumstantial evidence that, contrary to these assertions, Galvan participated in Reyes' criminal activities. The standard of review for sufficiency of the evidence is the same for direct and circumstantial evidence. *United States v. Bell,* 678 F.2d 547, 549 n. 3 (5th Cir.1982) (en banc). We must view the evidence in the light most favorable to the government and ask whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* at 549. "We will reverse only if a reasonably minded jury must necessarily have entertained a reasonable doubt of a defendant's guilt." *United States v. Vergara,* 687 F.2d 57, 60 (5th Cir.1982). Having had the opportunity for measured deliberation which circumstances often deny to our brethren on the trial bench, we must conclude that the government's evidence is insufficient to dispel a reasonable doubt of Galvan's guilt on both the substantive and conspiracy counts.

### The Conspiracy Counts

■ The essence of a drug conspiracy is an agreement to violate the narcotics laws. *United States v. Vergara, supra,* 687 F.2d at 60; *United States v. Davis,* 666 F.2d 195, 201 (5th Cir.1982). To establish such an agreement, the government has the burden to prove beyond a reasonable doubt that Galvan had "the deliberate, knowing, specific intent to join the conspiracy." *United States v. DeSimone,* 660 F.2d 532, 537 (5th Cir.1981) (quoting *United States v. Morado,* 454 F.2d 167, 175 (5th Cir.), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972)). "It is not enough for it merely to establish a climate of activity that reeks of something foul." *Id.* (quoting *United States v. Wieschenberg,* 604 F.2d 326, 332 (5th Cir.1979)).

■ The principal evidence relied upon by the government and the trial court to establish an agreement consisted of telephone company records of long distance toll charges. These records indicate that on January 4, 1981, the day before Reyes' arrest, three calls were made between the telephone at Reyes' residence in Houston and the telephone at Galvan's residence in San Benito, Texas. These were the first recorded calls since mid-December. No calls were recorded on January 5, the day of Reyes' arrest near the border. A telephone call from Galvan's telephone to Reyes' telephone was made on January 6, following Reyes' release from jail. The government characterized the January 4 calls as a "flurry of activity" from which the jury might infer Galvan's agreement with Reyes to commit the crimes of January 5. The absence of any calls on the day of the crime, coupled with renewed contact following Reyes' release, is apparently offered to support the inference that Galvan knew of and agreed to Reyes' activities.

■ We do not think the jury could reasonably find an agreement based upon this evidence. To do so, a double inference is required. First, it must be inferred that the telephone calls were actually made by Galvan and Reyes; the records establish only that the calls were between Galvan's and Reyes' residences. Second, based upon the timing of the calls and the inference that Galvan and Reyes made them, the jury must infer that the content of the conversations was the alleged conspiracy. When the government attempts to prove the existence of a conspiracy by circumstantial evidence, each link in the inferential chain must be clearly proven. *United States v. Schorr,* 462 F.2d 953, 959 (5th Cir.1972). Neither link was adequately proved in this case. There is absolutely nothing in the record to indicate who actually made the telephone calls. The trial judge suggested that the inference might even be stronger that Mrs. Galvan, rather than Galvan, made the calls since the evidence showed that she purchased the car loaned to Reyes.

Even if we assume that Galvan and Reyes conversed, a more significant defect in the evidence is the government's failure to prove that the subject of their conversations was a criminal agreement. The government's "flurry of activity" theory disintegrates upon close examination. The first two calls on January 4 were from Reyes' telephone to Galvan's telephone. The first was placed at 7:24 p.m. and lasted one minute; the second immediately followed at 7:25 p.m. and also lasted for only one minute. The third call was made from Galvan's telephone at 7:49 p.m. and lasted for three minutes. Defense counsel's suggestion at oral argument that the first call was a bad connection is plausible, given the timing of the calls, and is consistent with our view that these brief telephone calls are hardly a "flurry" of suspicious activity at all. *Compare United States v. Vergara, supra* (inference of agreement based in part upon flurry of activity which included repeated meetings between defendant and co-conspirators together with direct evidence of defendant's own actions). Further, Galvan's renewed contact with Reyes following Reyes' release hardly adds support to an inference of a preexisting criminal agreement. Communication would be only natural in light of the government's seizure of the vehicle Reyes had borrowed.

It is our conviction that, viewed in the light most favorable to the government, these telephone calls prove nothing more than a possible close association between Reyes and Galvan. "We have consistently held that mere association with persons involved in a criminal enterprise is insufficient to prove participation in a conspiracy." *United States v. DeSimone,* 660 F.2d 532, 537 (5th Cir.1981) (citing *United States v. Horton,* 646 F.2d 181, 185 (5th Cir.1981); *United States v. Fitzharris,* 633 F.2d 416, 423 (5th Cir.1980); *United States v. Barrera,* 547 F.2d 1250, 1257 (5th Cir.1977)).

In *Barrera, supra,* government undercover agents arranged to purchase heroin through two drug dealers named Gamez and Bueno. In order to carry out the sale, Gamez and Bueno took the agents to Somerset Road where they were to meet "the man" with whom the "connection" would be made. While the agents and the dealers were parked on the road, a pickup driven by the defendant Barrera pulled up. Gamez and Bueno walked over and talked to Barrera out of the agents' earshot. Bueno returned and said that "the man" had seen a suspicious-looking car in the area and did not want to deliver the heroin at that time. The next day, Gamez and Bueno delivered heroin to the agents and were arrested. Barrera was convicted of conspiracy with Gamez and Bueno to possess heroin with intent to distribute. On appeal we observed that the strongest evidence of an agreement by Barrera to enter the conspiracy was the meeting and conversation on Somerset Road. Emphasizing that no proof of the contents of that conversation was offered, we held that a showing of mere association and communication with the perpetrator of a criminal enterprise is not enough to prove participation. 547 F.2d at 1256–57.

In the present case, as in *Barrera,* there was no proof of the content of the defendant's conversations with his alleged coconspirator. Further, the circumstances surrounding Galvan's association with Reyes are much less supportive of an inference of guilt than the facts in *Barrera.* Our conclusion must be the same.

We have considered other evidence offered by the government, including certain inconsistent statements made by the defendant and the alleged unsuitability of the defendant's vehicle for its claimed business use. Although these factors may arouse additional suspicion, they do not move the government's case closer to proof beyond a reasonable doubt of Galvan's "deliberate, knowing, specific intent to join the conspiracy."

### The Substantive Counts

■ The evidence that fails to prove Galvan's agreement to join Reyes' criminal enterprise is patently insufficient to sustain his convictions for possession and importation. *See United States v. DeSimone, supra,* 660 F.2d at 538. Galvan never physically possessed any marihuana. Even if we

assume that the evidence allows an inference that Galvan, rather than his wife, owned the vehicle Reyes used, mere ownership of a vehicle containing contraband is not enough to constitute constructive possession. *United States v. Ocanas,* 628 F.2d 353, 361 (5th Cir.1980); *United States v. Barrera, supra,* 547 F.2d at 1256. Dominion or control over the drug is required. *Id.* Existence of a "working relationship" between Galvan and Reyes would support an inference of such dominion or control. *United States v. Horton,* 488 F.2d 374, 381–2 (5th Cir.1973). However, the government has failed to prove any such relationship for the same reasons that its proof of a conspiracy agreement was insufficient. Similarly, since 21 U.S.C. § 952(a) is a specific intent statute requiring knowledge that a controlled substance is being imported, *United States v. Restrepo-Granda,* 575 F.2d 524, 527 (5th Cir.1978), Galvan's conviction of importation without proof of his state of mind must likewise fail.

Our review of the evidence has convinced us that the jury could not have reasonably determined that the government proved its case against the defendant. The motion for judgment of acquittal should have been granted.

REVERSED AND RENDERED.