UNITED STATES of America, Plaintiff-Appellee,

v.

Wayne Marvin GORDON, Defendant-Appellant.

No. 82-1164.

United States Court of Appeals, Fifth Circuit.

Aug. 1, 1983.

Daniel J. Markey, Jr., New Orleans, La., for defendant-appellant.

Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG and POLITZ, Circuit Judges.

CLARK, Chief Judge:

Wayne Marvin Gordon was convicted of conspiracy to possess marijuana and possession of marijuana with the intent to distribute it. Gordon had moved to suppress the marijuana seized by border patrol agents when they stopped his truck. The district judge denied the motion and found Gordon guilty on the basis of a stipulated record. On appeal, Gordon argues that the stop of the truck was unconstitutional, the evidence was not sufficient to support either conviction, and the judge's failure to secure a signed waiver of jury trial prior to his trial requires reversal. Gordon's brief obliquely raises the issue of the sufficiency of the evidence. This question was addressed by the court during oral argument and counsel for both parties, acting upon the court's request, have filed supplemental briefs on the issue. As a result, this court affirms Gordon's conviction for possession with intent to distribute and vacates the conspiracy conviction.

### The Facts

Gordon and his passenger, John Joseph McMahon, Jr.[1], were arrested by border patrol agents about 10 p.m. December 7, 1981 after their stakebed truck tripped a sensor alarm on Highway 385 south of Marathon, Texas. From Marathon, this highway runs south to Big Bend National Park on the Texas-Mexico border. The sensor indicated that the vehicle which triggered the alarm was heading north.

The border agents, Carl Fisher, Jr. and his partner, Clanton, traveled to the area of the sensor alarm and encountered a stakebed truck about five miles south of Marathon. They did not recognize the truck as belonging to any area residents and the agents knew that tourist travel along this road generally ended by 8:00 p.m. The agents also noticed that the truck had a hidden compartment underneath the bed. Armed with this information, the agents decided to stop the truck.

Agent Fisher asked Gordon, the driver, where he and his passenger were coming from. Gordon said they had been fishing, but the agents could see no fishing gear in the truck. Fisher noticed that the bed of the truck was higher than normal. He looked underneath and saw that it sat above the frame. Aware that such a compartment is often used to smuggle aliens into the country, Fisher took a closer look. Using his flashlight, he could see scratch marks on the bottom plate of the compartment. He leaned down and sniffed the compartment, smelling the odor of marijuana.

Fisher asked Gordon to open the compartment, but Gordon said he did not know how to open it. However, Fisher found two bolts that held the cover in place and using a socket ratchet that Gordon provided, he opened it. Two boxes found inside the compartment contained more than sixty pounds of marijuana.

### The Stop and Search

Gordon's first argument is that the stopping of the truck was a violation of his constitutional rights because the agents had no reasonable suspicion of illegal activity. He contends that the agents do not stop every vehicle which trips a highway sensor alarm, therefore, the stop of his vehicle amounts to a "selective" stop.

To justify the suppression of evidence in a case such as this, we must conduct a two-step inquiry: (1) was there reasonable suspicion of illegal activity to justify the

---

1. McMahon and Gordon were tried together by the district court. They also appealed their convictions together. On the eve of oral argument before another panel of this circuit, Gordon's attorney informed the court that he could not appear the next day, but stated that McMahon's attorney could argue for both men. Judge Tate, the senior active panel member, acceded to that request, but required Gordon's attorney to secure a signed statement from Gordon agreeing to that procedure. When the attorney was unable to secure the release, the panel decided to hear only McMahon's appeal and to schedule Gordon's for a later date. In McMahon's case, the panel reversed McMahon's conviction. The panel found that the record was devoid of any evidence tying McMahon, the passenger, to the marijuana. The panel, therefore, did not reach the issue of the legality of the stop of the truck. *United States v. Gordon,* 700 F.2d 215 (5th Cir.1983).

stop; and (2) was there probable cause to permit the subsequent search of the compartment.

Whether the stop of a vehicle in the border search context is proper is determined according to the factors set out in *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The factors that may be considered by officers in deciding whether a roving border stop is warranted are:

the time of day, characteristics of the area, proximity of the area to the border, the pattern of traffic on the road in question, the officers' previous experience with aliens and contraband traffic, the behavior of the driver or drivers, and the characteristics of the vehicle involved.

*Id.* at 885, 95 S.Ct. at 2582. In this case, the stop occurred after dark on a section of roadway which leads directly north from the border. There is only one paved roadway which intersects Highway 385 between Marathon, Texas and the national park. Highway 2627 veers away from Highway 385 in a southeasterly direction. It also goes straight to the border. The sensor which alerted the border agents was located north of the confluence of the two highways to record all traffic northbound from the border area. Gordon's truck was stopped five miles short of Marathon. Lalinda, the nearest border town, was 18 to 20 miles distant, though the stopping point was approximately 40 miles north on Highway 385 from the border town of Boquillas del Carmen.

Agent Fisher testified that traffic on the highway had stopped for the evening. Local traffic on the highway stops after dark and the tourists coming and going from the park usually stop driving by 7:00 or 8:00 p.m. The hunting season was closed, so no hunting traffic was expected on the road. When the agents drove south from Marathon on Highway 385 to investigate the alarm, Gordon's stakebed truck was the only vehicle they encountered.

Fisher had been a border patrol agent for 15 years at the time of this stop. He had been assigned most recently to the Fort Hancock and Alpine areas and was familiar with the Marathon, Alpine, Marfa region.

The driver's behavior in this case adds nothing to the *Brignoni-Ponce* calculus because the truck was being driven properly within the speed limit and the agents could not see into the cab because it was dark. However, the vehicle's characteristics properly concerned Agent Fisher. The truck was a stakebed truck usually used for hauling materials. It was not a local vehicle. Fisher had not seen it before. The stakebed truck was set up high, according to Fisher, and he testified that he could see a concealed compartment below the bed of the truck. He testified that these compartments are ofttimes used to transport illegal aliens.

[1] Based upon these considerations, Fisher's decision to stop the vehicle was proper. The facts available to him were sufficient "together with rational inferences from those facts" to create a reasonable suspicion of illegal activity. *Brignoni-Ponce,* 422 U.S. at 884, 95 S.Ct. at 2581. Given the facts of this case, there was no selective stop.

Gordon argues that *United States v. Frisbie,* 550 F.2d 335 (5th Cir.1977), and *United States v. Shields,* 534 F.2d 605 (5th Cir. 1976), should control in this case. In both decisions this court held that the triggering of a highway sensor device alone is insufficient to create the necessary reasonable suspicion to justify a stop. Our opinion is not in conflict with those holdings. The sensor device here merely alerted the border agents that there was northbound traffic on a road that led only from the border. Once the vehicle was spotted, the other articulable facts we have detailed here created the reason to stop the vehicle.

■ The stop being justified, it cannot be doubted that probable cause existed to search the vehicle. Agent Fisher shined his flashlight in the compartment area and saw scratches on a plate indicating to him that something had been slid into the compartment. The compartment had a solid bottom. Gordon told the agents that they

were fishing in the park, but there was no fishing equipment or fish visible in the truck or its bed. Fisher also smelled the clear aroma of marijuana. This odor emanating from a vehicle is sufficient to create probable cause for a search. *United States v. Barnard,* 553 F.2d 389, 392 (5th Cir.1977).

### Constructive Possession

[3] Gordon's next argument is contained within his attack on the stop of the truck. He argues that the evidence is insufficient to prove that he possessed the marijuana. He cites two Ninth Circuit cases for definitions of "possession" in drug cases. However, decisions of this court on the issue of possession control this panel. The law is clearly articulated in *United States v. Vergara,* 687 F.2d 57 (5th Cir.1982):

> Three elements must be proven by the government in order to sustain a conviction for the crime of possession of heroin with intent to distribute: "(1) knowing (2) possession of heroin (3) with intent to distribute it." *United States v. Richards,* 638 F.2d 765, 768 (5th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981). Possession may be actual or constructive, may be joint among several defendants, and may be proved by circumstantial as well as direct evidence. *United States v. Wilson* [657 F.2d 755 (5th Cir.1981)]. Constructive possession has been defined as "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance." *United States v. Glasgow,* 658 F.2d [1036] at 1043 (quoting from *United States v. Marx,* 635 F.2d [436] at 440). One who owns or exercises dominion or control over a motor vehicle in which a contraband substance is concealed may be deemed to possess the contraband. *Id.; United States v. Riggins,* 563 F.2d 1264 (5th Cir.1977), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978).

687 F.2d at 61–62. The record shows here that Gordon was the driver of the vehicle when it was stopped. He had control over the truck. He did the talking with the agents and he got outside the truck as they examined the compartment. Gordon gave the agents the tools they needed to enter the compartment. In fact, after the boxes containing the marijuana were pulled from the compartment, Gordon walked to the cab and returned with a Phillips screwdriver to open the boxes.

■ In addition, the judge, in deciding whether the possession was "knowing," could consider Gordon's false exculpatory statement to the agents that they had been fishing. *United States v. Minshew,* 686 F.2d 250, 252 (5th Cir.1982) (upholding jury instructions to that effect).

The evidence, reviewed in the light most favorable to the government, is sufficient to affirm the possession conviction.

### Evidence of Conspiracy

■ The first count of Gordon's indictment charged him with conspiracy to possess marijuana in violation of 21 U.S.C. § 846. In drug conspiracy cases, the government must prove beyond a reasonable doubt that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it. *United States v. Jackson,* 700 F.2d 181 (5th Cir.1983). It is unnecessary in drug conspiracy cases to prove an overt act in furtherance of the conspiracy. *United States v. Kupper,* 693 F.2d 1129, 1134 (5th Cir. 1982). The government must show beyond a reasonable doubt that the defendant had the deliberate, knowing, and specific intent to join the conspiracy, *United States v. Galvan,* 693 F.2d 417, 419 (5th Cir.1982), and this court will not "lightly infer a defendant's knowledge and acquiescence in a conspiracy." *Jackson,* 700 F.2d at 185. It is not enough that the defendant merely associated with those participating in a conspiracy, *id.,* nor is it enough that the evidence places the defendant in "a climate of activity that reeks of something foul." *Galvan,* 693 F.2d at 419.

■ Even viewing the evidence in a light most favorable to the government, there exists here absolutely no evidence of a conspiracy. There is nothing in the record tying Gordon and his passenger to a drug

conspiracy. There is no evidence that the men made any form of knowing agreement to smuggle drugs into the country or even to possess them. Their mere presence in the truck with the contraband is insufficient proof of conspiracy.[2]

### Jury Waiver

On January 4, 1982, the district court conducted a hearing on Gordon's motion to suppress the seized marijuana. The government called one witness, Agent Fisher, and presented four pieces of evidence, a map and three pictures of the truck. The motion was denied. On February 22, when Gordon returned for trial, the attorneys informed the court that they had agreed to a number of stipulated facts. The trial judge, taking into account these stipulations and the evidence adduced at the hearing, found Gordon guilty of both counts of the indictment. Later that day, Gordon with his attorney present signed a waiver of jury trial.

Such tardy waivers of jury trial are not to be encouraged, but under the facts of this case, no reversible error resulted here. A defendant in a criminal case is guaranteed the right to be tried by a jury; however, such right may be waived. *Singer v. United States,* 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965). A written waiver is sufficient under Rule 23(a), Fed.R. Crim.Proc. It is not necessary that the district court orally examine the defendant to determine if the waiver was intelligently made. *United States v. Tobias,* 662 F.2d 381, 387 (5th Cir.1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982). As noted in *Tobias,* absent a claim of prejudice by the defendant, it is assumed that the waiver was knowingly made.

Gordon makes no allegation that he was prejudiced. During his appearance in court, the trial judge questioned him about the stipulated facts and he stated in court that he agreed to their use. He was represented by counsel at that point and at the time he signed the tardy waiver. None of Gordon's substantial rights were affected. Any error was not a reversible one. Fed.R. Crim.P. 52.

The district court's decision is affirmed in part and, in part, reversed and remanded with directions to vacate the conviction of conspiracy.

AFFIRMED in Part and, in Part, REVERSED and REMANDED.

**2.** Because we decide the conspiracy issue on the basis of the sufficiency of the evidence, it is unnecessary for us to analyze the law relating to acquittals of co-conspirators. We emphasize that our decision on this point is based upon insufficient evidence and not upon McMa-

hon's acquittal on appeal. We also note that the government candidly admitted during oral argument and in the supplemental briefs that the conspiracy evidence was insufficient to support Gordon's conviction.