**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Conrad John BLESSING, III and Rene
Garcia Rodriguez,
Defendants-Appellants.**

No. 83-2159.

United States Court of Appeals,
Fifth Circuit.

March 1, 1984.

Ramon Garcia, Edinburg, Tex., Nancy M. Simonson, Corpus Christi, Tex., for Blessing.

Hugh M. Davis, Jr., Detroit, Mich., for Rodriguez.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ and JOHNSON, Circuit Judges.

CLARK, Chief Judge:

Conrad John Blessing, III, and Rene Garcia Rodriguez appeal their jury convictions for conspiring to possess with intent to distribute a controlled substance. Blessing and Rodriguez assert several errors on appeal, the most significant being the sufficiency of the evidence supporting their convictions. We affirm Rodriguez's conviction and reverse Blessing's conviction.

I

In early October 1982, two confidential informants told William Martin, a special agent with the Drug Enforcement Administration, that Jose Jimenez and Patrick Treacy wanted to buy Mandrax (methaqualone tablets), a controlled substance. According to the informants, Treacy had $140,000 and a pound of cocaine, the street value of which was estimated to be at least $40,000. Martin decided to conduct a reverse undercover operation in which DEA agents would pose as suppliers of narcotics. The informants arranged for Martin to meet with Treacy and Jimenez on October 5 and, at Martin's request, conducted the initial negotiations for the sale price.

Martin met twice with Treacy and Jimenez on October 5 near McAllen, Texas. At the second meeting, Martin showed Treacy approximately 400,000 Mandrax pills, which Treacy and Jimenez agreed to buy for $340,000. During this discussion, Treacy indicated he knew someone who could transport the pills. As a gesture of good will, Martin gave Treacy ten pills, and in return, Treacy gave Martin $10,000 as a down payment.

On October 15, Treacy called Martin, and said he would be returning to McAllen on the 18th. When Treacy arrived at Harlington airport in McAllen, Blessing was with him. Blessing rented a car from an airport rent-a-car agency with his credit card because Treacy did not have a major credit card. Treacy and Blessing then drove to a Holiday Inn, where Treacy checked into room 216. Treacy paid for his room in cash. On October 19, Treacy called Martin to arrange a meeting because Treacy wanted more samples. They met shortly after lunch at Denny's Restaurant and then drove to La Plaza shopping mall. There, Martin gave Treacy ten pills, and Treacy gave Martin one ounce of cocaine worth $2500. Treacy said he had some cars available to trade as part of the deal. He showed Martin photographs of three cars, which Treacy said belonged to a car dealer in Weslaco, Texas. To Martin, the cars corroborated Treacy's statement that someone in the Valley owed him money. Treacy told Martin he would show the sample of pills to his "money people" in the Valley and get back in touch about closing the deal.

When he left the meeting, Treacy went by his hotel room and then drove alone to Weslaco in the car rented with Blessing's credit card. In Weslaco, Treacy stopped at

a convenience store and then went to Rodriguez's home, where he remained for over one and one-half hours. After leaving Rodriguez's home Treacy called Martin and approved the transaction arranged earlier that day.

On October 20, DEA agents observed Treacy and Blessing leave Treacy's hotel room and drive to a car rental agency, where Blessing rented a white van. Later, DEA agents watched Rodriguez and Treacy leave the hotel room and drive in the van to La Plaza Mall, where Rodriguez got into a Cadillac. Both men then drove back to the Holiday Inn, Rodriguez in the Cadillac and Treacy in the van.

When Rodriguez got out of the Cadillac at the Holiday Inn, he was carrying a brown paper bag bearing a Carl's Food-N-Stuff logo. He carried the bag into an enclosure. Treacy had entered the enclosure before Rodriguez. Blessing walked into the enclosure last. Neither Treacy nor Blessing carried anything into the enclosure. Treacy left the enclosure carrying the Carl's Food-N-Stuff paper bag and drove away in the van to meet with Martin at Denny's. Blessing walked into the Holiday Inn office, and then drove away in the Cadillac with Rodriguez.

At Denny's, Martin inquired about the money, and Treacy said it was under the passenger's seat in the van. Martin went into the van and pulled out a Carl's Food-N-Stuff paper bag filled with money. After telling Treacy to follow him, Martin got out of the van and gave the signal to arrest Treacy. A short time later, Blessing and Rodriguez were arrested at another location.

Blessing, Rodriguez, Treacy, and Jimenez were indicted for conspiring to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. § 846. Jimenez was never arrested and the indictment against Treacy was dismissed on a motion by the government. Blessing and Rodriguez were convicted by a jury. Blessing received a two-year prison sentence and a fine of $5000. Rodriguez was sentenced to eight years imprisonment.

## II

Both defendants argue that the evidence presented at trial is insufficient to support their conspiracy convictions. We address their arguments under the familiar standard of *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942): "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Id.* at 80, 62 S.Ct. at 469. "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc). In *United States v. Gordon,* 712 F.2d 110 (5th Cir. 1983), a drug conspiracy case brought under 21 U.S.C. § 846, this court summarized the principles that guide our analysis:

> In drug conspiracy cases, the government must prove beyond a reasonable doubt that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it. *United States v. Jackson,* 700 F.2d 181 (5th Cir.1983). It is unnecessary in drug conspiracy cases to prove an overt act in furtherance of the conspiracy, *United States v. Kupper,* 693 F.2d 1129, 1134 (5th Cir.1982). The government must show beyond a reasonable doubt that the defendant had the deliberate, knowing, and specific intent to join the conspiracy. *United States v. Galvan,* 693 F.2d 417, 419 (5th Cir.1982), and this court will not "lightly infer a defendant's knowledge and acquiescence in a conspiracy." *Jackson,* 700 F.2d at 185. It is not enough that the defendant merely associated with those participating in a conspiracy, *id.,* nor is it enough that the evidence places the defendant in "a climate of activity that reeks of something foul." *Galvan,* 693 F.2d at 419.

712 F.2d at 114.

## A

As evidence supporting Blessing's conviction, the government points to his arrival in

McAllen with Treacy on October 18. Treacy had earlier told Martin on October 15 that he would arrive in McAllen with his "partner," but did not specifically identify Blessing. Because Blessing arrived with Treacy, the government argues, Blessing was Treacy's partner. Together, Treacy and Blessing checked into the same room at a Holiday Inn in McAllen. Blessing's most significant connection with the conspiracy is that he rented two vehicles, a van and a car, that were used by the coconspirators in furtherance of the conspiracy. Blessing also checked out of the Holiday Inn with Rodriguez at the time Treacy went to deliver the purchase money to Martin. The government concedes that Treacy never said anything to Martin that implicated Blessing or Rodriguez.

Blessing counters that the government has not shown that he participated in any of the negotiations for the sale of the drugs. In fact, between October 5 and October 20, Blessing never met with Martin. Blessing did not accompany Treacy to Rodriguez's house on October 19. Neither did he go with Treacy and Rodriguez to pick up the Cadillac, which was used by Rodriguez to transfer the purchase money to Treacy. Blessing rented the car and the van only because he had a major credit card and Treacy did not and because rental agencies require them in lieu of a cash deposit. A search of Treacy revealed that he had no major credit cards in his possession.

■ We hold that the evidence is insufficient to support Blessing's conviction. Our case law requires more than what the government, at most, has done here—place Blessing in a "climate of activity that reeks of something foul." *Galvan*, 693 F.2d at 419. Blessing's rental of the van and the car do tend to establish his connection with the conspiracy. *See United States v. Davis*, 666 F.2d 195, 201 (5th Cir.1982); *United States v. Riggins*, 563 F.2d 1264, 1265–66 (5th Cir.1977), *cert. denied*, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978); *United States v. Newcomb*, 488 F.2d 190, 192 (5th Cir.1974) (per curiam). But with no more than what the government has proven here,

renting the two vehicles cannot sustain Blessing's conviction. We reverse Blessing's conviction for lack of sufficient evidence that Blessing "had the deliberate, knowing, and specific intent to join the conspiracy." *United States v. Gordon*, 712 F.2d at 114. Because we reverse Blessing's conviction, we do not reach his other contentions on appeal.

### B

As to Rodriguez, the government points out that Treacy visited Rodriguez's home on October 19 for nearly one and one-half hours. Treacy's visit occurred shortly after he met with Martin to arrange the drug purchase. At that meeting with Martin, Treacy had said he would take the samples to his "money people" in the Valley before closing the deal with Martin. On the day of the purchase, Rodriguez drove a Cadillac from the La Plaza Mall to the Holiday Inn, where he entered an enclosure carrying a Carl's Food-N-Stuff paper bag. Treacy left with the bag and placed it in the van. Later Treacy was arrested after Martin seized this bag, which was filled with purchase money.

Rodriguez asserts that the government's case consists of a chain of insufficiently unconnected inferences. Although Treacy did visit Rodriguez's home, there is no evidence that Rodriguez was home that day or, if he was, that the meeting's purpose was to further the conspiracy. The government did not show that the bag Rodriguez carried into the enclosure contained money and that, if the bag did contain money, it was delivered to Treacy to purchase drugs.

■ We reject Rodriguez's argument. Treacy journeyed to Rodriguez's home immediately after telling Martin he had to see his "money people," and then, after leaving Rodriguez's home, called Martin to approve the deal. This activity could be taken by a reasonable juror to link Rodriguez to the conspiracy. Rodriguez's entry into the enclosure with the paper bag and his exit without it could similarly indicate that he intended to give it to Treacy. This evi-

dence is sufficient to support the jury's conviction of Rodriguez.

██ Rodriguez makes three other arguments in this appeal. First, he argues that the enhancement provision of the target substantive statute, 21 U.S.C. § 841,[1] does not apply to 21 U.S.C. § 846,[2] the conspiracy statute under which Rodriguez was convicted. He argues that a sentence for a conviction under the conspiracy statute can be enhanced only if there exists a prior conviction for the target offense. In other words, Rodriguez contends that his prior conviction for participation in a separate drug conspiracy cannot form the basis for enhancing his sentence for this second conspiracy conviction. Rodriguez cites no authority for his position, but says we should apply the reasoning of *Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). *Bifulco* held that the special parole term provisions in § 841 do not apply to a conspiracy conviction under § 846. *Id.* at 388, 100 S.Ct. at 2253. In analyzing § 846 the Court concluded that the term "imprisonment" as used in § 846 did not encompass the special parole provision in § 841. *Id.* at 388–90, 100 S.Ct. 2252–53. The Court noted the functional distinction between special parole and incarceration and also pointed out that special parole provisions are not included in all substantive offenses to which § 846 applies. *Id.* at 388, 100 S.Ct. 2252. No similar distinction may be drawn between the extended incarceration effect of the enhancement provision in § 841 and the punishment provisions of § 846. To the contrary, they are compatible. The enhancement provision of § 841 applies whether the prior conviction was for violating the target substantive statute or for conspiring to violate the target substantive statute, as was Rodriguez's prior conviction here.

██ Second, Rodriguez contends that there was insufficient evidence of the existence of a conspiracy to allow the introduction of a coconspirator's hearsay evidence. The trial court conducted the hearing mandated by *United States v. James,* 590 F.2d 575 (5th Cir.1979), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1976), and concluded that there was sufficient independent evidence of the conspiracy. The evidence includes Martin's testimony regarding his conversations with Treacy, the surveilling agents' testimony regarding the defendants' movements, the handling of the money by Rodriguez, and the location of the money in the van. The coconspirator's statements were properly admitted.

1. Section 841 provides in part:
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
   (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
   (b) Except as otherwise provided in section 845 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
   (1)(A) In the case of a controlled substance in Schedule I or II which is a narcotic drug, such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both. If any person commits such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 30 years, a fine of not more than $50,000, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such a term of imprisonment and shall, if there was such a prior conviction, impose a special parole term of at least 6 years in addition to such term of imprisonment . . . .

2. Section 846 provides:
   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Last, Rodriguez asserts that his confrontation rights under the sixth amendment were violated because the government failed to reveal the existence of the plea bargain with Treacy and because hearsay testimony was introduced against him. The failure to learn the terms of the plea agreement did not in any way infringe Rodriguez's right to confront Treacy since he was not a witness. When asked to require the government to reveal the contents of the plea agreement, the district court stated, "I will not cause [the plea agreement] to be made available unless [Treacy] is called as a witness." Record on Appeal, Vol. IV, at p. 239. Rodriguez's counsel considered Treacy unavailable as a witness because Treacy told him that the terms of the plea agreement prevented him from testifying and because counsel felt that, if called, Treacy would invoke the fifth amendment privilege against self-incrimination. Rodriguez's counsel "did not bring the issue of [Treacy's] unavailability into the ambit of the 'discretion of the trial court to accept or reject counsel's representations' concerning [Treacy's] refusal to testify." *United States v. Fernandez-Roque,* 703 F.2d 808, 813 (5th Cir.1983) (quoting *Bailey v. Southern Pacific R.R.,* 613 F.2d 1385, 1390 (5th Cir.), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980)). Rodriguez states that the admission of hearsay violated his right to confront witnesses but does not identify any specific evidence.[3] We reject Rodriguez's argument. "It is not argued, nor could it be, that the constitutional right to confrontation requires that no hearsay evidence can ever be introduced." *Dutton v. Evans,* 400 U.S. 74, 81, 80, 91 S.Ct. 210, 215, 27 L.Ed.2d 213 (1970).

The conviction of Rene Garcia Rodriguez is AFFIRMED. The conviction of Conrad John Blessing, III, is REVERSED.

---

**3.** A statement "offered against a party" and made "by a coconspirator of a party during the course of and in furtherance of the conspiracy" is not hearsay. Fed.R.Evid. 801(d)(2)(E).