**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Nichelle K. DAVIS, Defendant–
Appellant.**

No. 92–3143.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 21, 1992.

Decided Dec. 16, 1992.

Rehearing and Rehearing En Banc
Denied Feb. 2, 1993.

---

5. We observe that, if we were reviewing Williams' complaint *de novo,* his claims arguably may have some merit.

Terry Lehmann (argued), Office of the U.S. Atty., Cincinnati, OH, Bradley D. Barbin (briefed), Office of the U.S. Atty., Columbus, OH, for plaintiff-appellee.

Steven M. Brown, Columbus, OH, for defendant-appellant.

Before: BOGGS and SUHRHEINRICH, Circuit Judges; and GILMORE, Senior District Judge.*

GILMORE, Senior District Judge.

In this appeal, Defendant–Appellant contends the trial court erred in denying a Rule 29 motion for judgment of acquittal, that her conviction is against the manifest weight of the evidence, and that the district court erred in its determination of Appellant's base offense level for sentencing purposes. For the reasons stated herein, this Court affirms the judgment and sentence of the district court.

I

Appellant was charged in four counts of an eighty-one count indictment filed by the Grand Jury on June 8, 1989. Count 1 charged Davis and nine co-defendants with conspiracy to distribute over five kilograms of cocaine in violation of 21 U.S.C. § 846, and Count 8 charged Davis and one co-defendant with unlawful travel in interstate commerce on May 1, 1989, with intent to promote unlawful narcotics activity in violation of 18 U.S.C. § 1952. Additionally, Davis was charged in Count 72 and Count 80 of the indictment, but judgments of acquittal under Rule 29 of the Federal Rules of Criminal Procedure were ordered by the district judge after the Appellant's motion. Counts 1 and 8 were submitted to a jury, but the jury was unable to reach a unanimous verdict on any counts against Appellant. Consequently, the district court declared a mistrial, and denied Appellant's motions for judgment of acquittal under Counts 1 and 8. The case was retried in August and September of 1990.

---

* The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

At the second trial, Appellant was convicted of both Counts 1 and 8, Count 1 being conspiracy to distribute more than five kilograms of cocaine, and Count 8 being unlawful travel to promote illegal narcotics activity.

On September 25, 1990, the Court denied Appellant's motion for judgment of acquittal, and a lengthy sentencing proceeding started on February 5, 1991. After several adjournments and careful consideration of the proper sentence by the district judge, the district court determined that a base offense level of twelve (12) was applicable to the Appellant under the United States Sentencing Guidelines. A minor-role reduction was granted under U.S.S.G. § 3B1.2(b). The district court determined that Appellant's range of imprisonment was 6 to 12 months, and sentenced her to 10 months on each of Counts 1 and 8, to be served concurrently. In addition, Davis was sentenced to supervised release of five years on Count 1 and three years on Count 8, to be served concurrently with Count 1. A timely notice of appeal was filed.

## II

First, Appellant contends there was insufficient evidence as a matter of law to support her conviction, and claims that the district court erred in denying her motion for judgment of acquittal. Second, she claims that, even if the the judgment of acquittal under Rule 29 was properly denied, the conviction was against the weight of the evidence and should be reversed.

■ Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, a judgment of acquittal must be granted if "there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Fawaz*, 881 F.2d 259, 261 (6th Cir.1989). In deciding a motion for judgment of acquittal, neither the district court nor the court of appeals may make independent determinations regarding the credibility of witnesses or the weight to be given such evidence. *United States v. Levy*, 904 F.2d 1026, 1032 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991).

Further, the Government must be given the benefit of all reasonable inferences drawn from the evidence, including circumstantial evidence. *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985).

■ Thus, this Court must determine whether there was sufficient evidence presented to support the jury's verdict on Counts 1 and 8. If there was sufficient evidence to support Appellant's conviction, this Court must sustain the decision of the district court denying Appellant's motion for judgment of acquittal.

Appellant asserts that there was insufficient evidence to establish her knowledge of illegal narcotics activity. Moreover, Appellant contends that the Government did not present sufficient evidence to show that she agreed to join the conspiracy. Accordingly, Appellant argues that no rational trier of fact could find the essential elements of conspiracy beyond a reasonable doubt, even considering the evidence in a light most favorable to the Government.

Davis also asserts that her convictions are contrary to the manifest weight of the evidence because there was no evidence to support the Government's allegations that on May 1, 1989: (1) Davis transported cocaine and money, for the conspiracy, from Columbus, Ohio to New York City in the secret compartment of a blue Oldsmobile, and (2) Davis knew or should have known of an unlawful reason for traveling from Columbus, Ohio to New York City.

In support of her contentions, Appellant relies heavily upon *United States v. Bell*, 954 F.2d 232 (4th Cir.1992). She claims that the fact pattern in *Bell* is nearly identical to the facts in the instant case because both the instant case and *Bell* involved vehicles with secret compartments, governmental allegations that the drivers were drug couriers, and appeals from the trial court's denial of motions for judgment of acquittal. The *Bell* court concluded the Government had not presented sufficient evidence of the Defendant's knowledge of

illegal activity, nor was there sufficient evidence presented to prove that Defendant conspired to engage in such activity. Accordingly, the *Bell* court reversed the conspiracy conviction.

To the contrary, the Government contends that the district court properly denied the motion for judgment of acquittal, and that there was sufficient evidence to sustain the convictions. In support of its response, the Government quotes from the district court's memorandum of February 13, 1990, entered during the first trial and denying Appellant's motion for judgment of acquittal. The district court stated:

Documents and testimony of [co-defendant] Bosley and the Defendant established that a blue Oldsmobile was purchased with money from [co-defendant] Fearon and was registered in Davis' name. Davis admitted that on or about May 1, 1989, she drove the Oldsmobile to New York at the request of Fearon and that she drove it back to Columbus after staying in New York a relatively brief period of time. Prior to the trip, [co-defendant] Andrews saw Fearon leave their apartment with approximately $50,000 to $60,000, and she believed Fearon was taking the money to Davis because [co-conspirator] Page had told Fearon to send the money.

Intercepted conversations suggest that Davis, referred to during the conversations as Karen, was a courier for the drug distribution organization. Page and Fearon discuss giving money to Karen, Karen's driving to New York and Cincinnati, and various problems with Karen. Fearon tells another individual that his usual driver is pregnant, and Davis admitted that she was pregnant in May 1989. It is clear that "[a] defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances." Taking the totality of the evidence in the light most favorable to the Government, a reasonable juror could conclude that Davis had knowledge of the conspiracy and intentionally became a participant in its activities.

The Government claims that the facts presented during the second trial were remarkably similar to those presented during the first trial. It states further that the second trial presented additional evidence of Davis' illegal activity.

The Government also asserts that the trial court found sufficient evidence to deny Davis' motion for judgment of acquittal on Count 8 and quotes from the memorandum and order entered on February 13, 1990, during the first trial:

... Conviction of the Travel Act count requires proof beyond a reasonable doubt that the defendant did travel in interstate commerce with the intention of promoting the unlawful activity,.... The evidence ... reveals that on or about May 1, 1989, Davis and [co-defendant] Turner drove the blue Oldsmobile from Columbus to New York at the request of Fearon and that they returned in the same vehicle after staying in New York a relatively brief period of time. According to Davis' testimony, once they arrived in New York an unknown male took the blue Oldsmobile and Davis and Turner were given a ride in a red Acura for a few blocks and then took a taxi cab to a hotel. Davis stated that the purpose of the trip was to pick up another car for Fearon, but they drove back to Columbus in the same blue Oldsmobile they had driven to New York.

. . . . .

Viewing the evidence surrounding this trip in the light most favorable to the government, a reasonable mind could conclude that Davis and Turner travelled in interstate commerce with the intention of furthering the activities of the drug distribution organization, and that after travelling in interstate commerce Davis and Turner performed acts to promote that unlawful business enterprise.

A review of the record reveals that the Government produced evidence that Appellant was a member of a very broad-ranging cocaine conspiracy involving numerous people with different roles and degrees of culpability. Two of Davis' co-conspirators testified that Davis was a member of the

conspiracy, and that she acted as a courier for the conspiracy. For example, co-defendant Carr testified that she retrieved $1,500.00 from co-defendant Fearon's house for Davis, and she later watched Davis receive $1,500.00 from co-defendant Fearon. Moreover, the Government offered numerous recorded telephone conversations between different members of the conspiracy as proof of Appellant's illegal activity.

At the second trial of Appellant, the Government presented testimony that she drove a blue Oldsmobile from Columbus, Ohio to New York City on or about May 1, 1989, and stayed only a couple of hours in New York before returning to Columbus. The Government claimed that money and cocaine were hidden in secret compartments of the vehicle, and that Davis transported the contraband and money on that date. It further showed that Davis was paid $500.00 for making the trip. Moreover, the Government presented evidence that Davis was present when cocaine was sold by other co-defendants. Finally, the Government presented testimony at trial as to the illegal activity of other co-defendants, particularly evidence of narcotics transactions.

This Court concludes that there was sufficient evidence supporting Davis' conviction on Count 1 and Count 8. First, this Court holds that *Bell* can be distinguished from the facts of the instant case. In *Bell*, there were no co-conspirators who testified about the precise role of the defendant, while in the instant case two of the nine co-defendants indicted on the conspiracy charge testified that Davis was a courier for the conspiracy. Moreover, co-defendants Carr and Andrews testified they saw co-defendant Fearon pay Davis large sums of money. Finally, two intercepted conversations between co-defendants Andrews and Turner corroborated that Davis was a conspirator.

Second, this Court holds that the evidence outlined above is adequate to support the district judge's denial of the Rule 29 motion. Further, this Court finds the verdict of the jury was not against the great weight of this evidence.

It is true the Government did not present evidence as to the amount of cocaine for which Appellant was responsible. There was no seizure of cocaine immediately after the trip to New York City on May 1, 1989, and only circumstantial evidence was presented to establish that Appellant transported cocaine and money between Columbus, Ohio and New York City on May 1, 1989. However, it is clear the jury could have found Appellant guilty on Counts 1 and 8 without making a determination of the specific quantity of cocaine attributable to the Appellant.

There is no question in the Court's mind that, viewing the evidence in the light most favorable to the Government, there was sufficient evidence from which a reasonable mind might fairly conclude guilt beyond a reasonable doubt on both counts. The evidence was sufficient to establish that Appellant conspired to distribute cocaine, and to establish that she unlawfully travelled to promote illegal narcotics activity. Accordingly, the district court did not err in denying Appellant's motion for judgment of acquittal, and the Appellant's conviction was not against the manifest weight of the evidence.

### III

Appellant's final contention is that the district court erred in its determination of Appellant's base offense level for sentencing purposes.

The trial court held two extended sentencing hearings for Appellant. At the second sentencing proceeding on January 31, 1992, the district judge concluded that there was insufficient evidence presented at trial to estimate the specific quantity of cocaine attributable to the Appellant. The district court stated:

> She ... as I've said, was used by Fearon as a driver of an automobile with a secret compartment, and while there is, again, in the Court's view, sufficient evidence to find she was a member of the charged conspiracy, is guilty of the offense in question, I find that there has

been insufficient evidence presented, at least by a preponderance of the evidence, for me to make a fair, and I emphasize "fair," a fair estimate of the specific quantity of cocaine which should be attributed to this particular Defendant. I think the circumstances of Miss Davis' case are unusual and may, indeed, be unique in terms of attempting to apply the drug quantity table.

Because of the district judge's inability to estimate the amount of cocaine attributable to the Appellant, the district court applied the lowest base offense level applicable to cocaine under the drug quantity table, a level twelve (12).

Section 2D1.4(a) of the Sentencing Guidelines sets forth the standard for determining the base offense level in conspiracies:

Base offense level: If a defendant is convicted of a conspiracy or an attempt to commit an offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

Application Note 2 to this Section states:

When there is no drug seizure ..., the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances sold by the defendant, and the size or capability of any laboratory involved.

The jury clearly found that the Appellant conspired to distribute cocaine, and this Court feels that the district court acted very conservatively in setting a base offense level of twelve (12). Notably, the district judge applied the lowest base level applicable to Davis' offense. In doing so, the district court stated:

Because of my inability to reach what I would feel in good conscience is a fair, reasonable estimate of the specific amount of cocaine to be charged to her, and yet be consistent and respect the verdict of the jury, which I do, I believe that I should apply the lowest Base Offense Level applicable to cocaine under

the drug quantity table, and that is a level 12. This recognizes, I believe, the participation of the Defendant in the cocaine conspiracy, her role in that conspiracy, but it does not penalize her by engaging in my speculating concerning a larger amount of cocaine than that called for by the lowest level in the drug quantity table.

In adopting that position, the trial court followed the mandate of this court in *United States v. Walton,* 908 F.2d 1289, 1302 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990), where the Court said:

We believe that the guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not *actually* responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate. Thus when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution.... While this may result in an underestimation of the quantity of drugs involved in some few cases, we believe it is nonetheless constitutionally required to prevent excessive sentences.

(emphasis in original). Commendably, the sentencing judge selected the lowest applicable base offense level for the sentence because he was unable to estimate fairly the amount of cocaine attributable to Davis. Although the jury had found Appellant to be a member of the conspiracy, the district court did not convert either the $30,000, or the cocaine, seized from Davis' co-conspirators to determine the base offense level. Rather, the district court acted very conservatively in setting the base offense level at twelve (12).

█ It is clear that a trial court's finding of fact regarding the amount of a con-

trolled substance for which a defendant is to be held accountable must be accepted by a court of appeals unless it is clearly erroneous. *Walton, supra.* This Court concludes, therefore, the district court's finding was not only wise, it clearly did not offend any of the Appellant's rights. The United States has not cross-appealed the district court's determination, and this Court feels the determination was clearly reasonable in light of all the facts before the district court.

For the foregoing reasons, the judgment and sentence given to Appellant are affirmed.

SUHRHEINRICH, Circuit Judge, dissenting.

Because I cannot agree that the government has proven the requisite elements of a conspiracy under 21 U.S.C. § 846, I dissent.

To convict a defendant under § 846, "the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990) (quoting *United States v. Stanley,* 765 F.2d 1224, 1237 (5th Cir. 1985)), *cert. denied,* —— U.S. ——, 111 S.Ct. 978, 112 L.Ed.2d 1063 (1991). This requires that "the defendant had the *deliberate, knowing, and specific intent to join the conspiracy....*" *United States v. Gordon,* 712 F.2d 110, 114 (5th Cir.1983) (emphasis added). Circumstantial evidence may be used to establish a defendant's intent, but "[s]uch inferential analysis is not boundless...." *United States v. Bell,* 954 F.2d 232, 236 (4th Cir.1992). Although this is an admittedly close case, I do not believe that a reasonable mind could find that defendant knowingly and intentionally joined the conspiracy.

The majority aptly summarizes the evidence introduced by the government. To be sure, the evidence naturally leads one to suspect that defendant knew that a drug ring was operating around her and that she had intentionally become a part of it. However, raising a mere suspicion of defendant's involvement and knowledge is not enough. *See United States v. Giunta,* 925 F.2d 758, 766 (4th Cir.1991) (one cannot find "guilt by an unacceptable process of raw speculation rather than by a reasoned process of inferring guilt beyond a reasonable doubt").

In a conclusory manner, the majority contends that the evidence shows that defendant was a member of the conspiracy. For example, the majority points to telephone conversations between other members of the conspiracy as showing that defendant was a member of the conspiracy. However, a review of the record shows that none of these conversations indicate that Davis intended to join the conspiracy or even knew of the conspiracy. Likewise, the testimony of other conspirators that defendant was a courier does not show that defendant intended to be a drug courier. Rather, the evidence shows only what the other conspirators intended or believed.

Other evidence is similarly flawed. For example, although defendant did receive money from other conspirators, there is no indication that she accepted the money knowing that it was payment for being a drug courier. Further, although defendant was physically present during cocaine sales, the majority points to no evidence that defendant was personally involved with or even aware of these transactions. Finally, although defendant travelled with other conspirators to New York City, the majority again fails to identify any evidence showing that defendant knew that drugs were being transported.

Several circuits, including our own, have refused to convict a defendant for conspiracy without specific proof of a defendant's knowledge of or intent to join a conspiracy. *See Bell,* 954 F.2d at 233–38 (evidence proving that the defendants knew each other well, possessed cocaine, and were involved in drug trafficking did not prove their specific intent to conspire with each other); *Giunta,* 925 F.2d at 767 (evidence proving that "Giunta was a reprehensible person" who engaged in the buying and selling of heroin did not prove his intent to enter into a specific conspiracy); *Pearce,* 912 F.2d at

162 (finding the defendants together in a crack house during a SWAT team raid did not prove a conspiracy existed); *United States v. Wexler,* 838 F.2d 88, 89–91 (3d Cir.1988) (evidence that the defendant acted as a "look-out" during the movement of a truck containing drugs did not prove his intent to join a conspiracy absent proof that he knew of the contents of the truck); *Gordon,* 712 F.2d at 112, 115 (driving truck with hidden compartment containing marijuana was not enough to prove that the defendants had entered into a conspiracy).

Although all of these cases differ factually, the principle in each remains the same: A conviction for conspiracy requires proof beyond a reasonable doubt that the defendant specifically entered into a criminal agreement. Because the evidence presented here does not contain such proof, I cannot agree with the majority's conclusion that the conviction should be affirmed.

Moreover, I believe that this case comes dangerously close to expanding conspiracy into a crime of association with the wrong people. "[M]ere association with conspirators is not enough to establish participation in a conspiracy." *Pearce,* 912 F.2d at 162 (quoting *Stanley,* 765 F.2d at 1243). *See Gordon,* 712 F.2d at 114 ("It is not enough that the defendant merely associated with those participating in a conspiracy...."); *United States v. Cooper,* 567 F.2d 252, 254–55 (3d Cir.1977) ("One may not be convicted of conspiracy solely for keeping bad company."). Rather, there must be specific evidence of a defendant's knowledge of and agreement to a conspiratorial agreement. *See Bell,* 954 F.2d at 236–38 ("A conspiracy is not shown until the government has presented evidence of a *specific* agreement to commit a *specific* crime, for the same criminal purpose, on the part of all indicted conspirators.") (emphasis original); *Gordon,* 712 F.2d at 114 ("[I]t [is not] enough that the evidence places the defendant in a 'climate of activity that reeks of something foul.' ") (quoting *United States v. Galvan,* 693 F.2d 417, 419 (5th Cir.1982)). Here, defendant was found guilty on the basis of her relationships with individuals engaged in drug trafficking. Because there is no evidence of defendant's intent to conspire with these individuals, I would reverse defendant's conviction.

For all the foregoing reasons, I DISSENT.