**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 8, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

JERMAINE L. BEDFORD,
a/k/a Jermaine Lee Mainedezze,

       Defendant - Appellant.

No. 05-1108

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 04-CR-0361-B)**

---

John M. Hutchins, Assistant United States Attorney (William J. Leone, United States Attorney, with him on the brief), Denver, Colorado, for the Plaintiff - Appellee.

Peter D. Menges, Denver, Colorado, for the Defendant - Appellant.

---

Before **EBEL**, **HOLLOWAY** and **TYMKOVICH**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

      Defendant-Appellant, Jermaine L. Bedford, pled guilty to possession of approximately 3.5 grams of cocaine base (crack cocaine) in violation of 21 U.S.C. § 844 after having been previously convicted in a Colorado state court for Controlled

Substance-Distribution, a felony drug offense under the laws of the State of Colorado.[1]

The United States District Court for the District of Colorado, in sentencing Bedford,

applied a two level enhancement under § 3C1.1 of the United States Sentencing

Guidelines (2004 Edition) (the "U.S.S.G." or the "Guidelines") for obstruction of the

administration of justice because Bedford ate the crack cocaine he was possessing before

he was arrested by the police.

Bedford appeals, contending that the district court erred by applying the

enhancement under U.S.S.G. § 3C1.1 because (1) his eating of the crack cocaine occurred

contemporaneously with arrest within the meaning of Application Note 4(d) to U.S.S.G. §

3C1.1; and (2) the government failed to show that his conduct materially hindered the

official investigation or prosecution of the instant offense. We have jurisdiction under 28

U.S.C. § 1291 and because we find no error with regard to the sentencing enhancement,

we **AFFIRM** the sentence.

## BACKGROUND

On July 27, 2004, an undercover narcotics investigator bought crack cocaine from

Nicholas D. Jeffcoat for $800. Bedford was with Jeffcoat during this purchase.

After the drug deal, officers followed the pair, who drove off in Jeffcoat's vehicle.

---

[1] The statutory maximum imprisonment for this offense is two years' imprisonment. *See* 21 U.S.C. § 844(a) (. . . if Defendant commits the offense after a prior conviction for any drug, narcotic, or chemical offense chargeable under the law of any State, he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years. . . ).

Later, when the vehicle was stopped by the Aurora, Colorado police, in marked police cars, Bedford was driving. This initial detention was made as a traffic stop.

At the time this stop was being effectuated, Bedford was in possession of some crack cocaine. The amount was between 3 and 4 grams. According to the plea agreement, Bedford knew that if the police discovered crack cocaine on his person, his state probation probably would be revoked. In order to prevent the officers from finding the crack cocaine, Bedford ate the crack cocaine before stopping the vehicle. After the vehicle was stopped, Bedford and Jeffcoat were taken into custody and transported to the Denver Police Department. At the Denver Police Department, Bedford vomited. Bedford then attempted to wipe up the vomit with a red garment he had been wearing in order to dispose of the vomit. However, a detective looking at the scene could see white matter in Bedford's vomit.

Police eventually recovered the red garment from the cell where Bedford had vomited. Laboratory analysis conducted by the DEA forensic chemists to determine whether the vomit stained garment contained cocaine base residue was positive for the presence of crack cocaine residue.

## PROCEDURAL HISTORY

On August 24, 2004, Bedford was indicted on three of four counts: Count I, conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846; Count III, possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841; and,

Count IV, possession of more than 5 grams of cocaine base, in violation of 21 U.S.C. § 844. Bedford and the government entered into a plea agreement and in exchange for his plea to a one-count information for mere possession, the government agreed to dismiss the indictment counts.

In the agreement, the government stated that Bedford should get a two-level reduction for acceptance of responsibility. However, the government also asserted that Bedford should receive a two-level obstruction increase in the offense level for eating the evidence. Bedford strongly disagreed in the plea agreement arguing: "The defendant opposes this adjustment, although the defendant does admit that he did eat the evidence, the defendant contends that eating the evidence occurred 'contemporaneously with arrest (e.g. attempting to swallow or throw away a controlled substance) . . .' within the meaning of Application Note 4(d)." ROA, Vol. I, doc. 89, p. 6.

The Presentence Report ("PSR")[2] recommended a two-level obstruction adjustment under U.S.S.G. § 3C1.1 (2004 edition). Because Application Note 4(d) used, as an example of no obstruction occurring, attempting to swallow or throw away a controlled substance, the PSR noted that Bedford's action went beyond an attempt. Specifically, the PSR stated that Bedford succeeded in ingesting the drugs and that the conduct prevented investigators from knowing the exact amount of cocaine base

---

[2] The PSR was presented January 19, 2005. This was right after *United States v. Booker*, 125 S. Ct. 738 (2005) was decided, and the PSR stated that the Guidelines were advisory and not mandatory.

involved. The obstruction adjustment along with a criminal history category of VI resulted in Bedford having a Guidelines range of 18-24 months. Without the obstruction adjustment, however, Bedford would have had a Guidelines range of 12-18 months.

Bedford filed objections to the PSR and disputed the conclusion that his conduct amounted to obstruction of justice pursuant to U.S.S.G. § 3C1.1. The probation office filed an "Addendum to the Presentence Report" on February 8, 2005 in which it stood by its earlier assessment, but clarified that it did not claim that Bedford had digested all of the crack and destroyed all of the evidence.

The district court held a sentencing hearing on February 18, 2005. At the hearing, counsel for Bedford stood by his earlier objection, basing it on Application Note 4(d) to § 3C1.1 of the U.S.S.G. The government opposed the defense objection to the two-level adjustment, claiming that the actions of Bedford frustrated knowledge of the amount of drugs and affected the sentencing ranges. The district court agreed with the government, finding that the investigation was hindered:

> THE COURT: Yeah. This is crack cocaine and of course the statutory sentencing ranges as well as advisory Guideline ranges involving crack cocaine are directly dependent upon the quantity of the controlled substance. In this case by swallowing this evidence it could never be determined what the weight of this particular controlled substance was and, therefore, hindered the official investigation. So I will deny the objection.

ROA, Vol. II, pp. 3-4 (emphasis added). The court then sentenced Bedford to 24 months' confinement in the custody of the Bureau of Prisons, and to one year of supervised release.

-5-

## DISCUSSION

Bedford now appeals. As mentioned above, he contends that the district court erred in applying U.S.S.G. § 3C1.1 to enhance the advisory sentencing range on two grounds. First, he argues that his conduct in eating the evidence was not "willful obstruction" but was instead "attempting to swallow" a controlled substance contemporaneously with arrest within the meaning of Application Note 4(d) of the Commentary to U.S.S.G. § 3C1.1. Second, he argues that even if his conduct constitutes actual swallowing, the government failed to demonstrate that the official investigation was materially hindered.

Where objections are timely raised, this court reviews a district court's factual findings for clear error and its legal interpretation and application of the United States Sentencing Guidelines de novo. *United States v. Norman*, 129 F.3d 1393, 1398 (10th Cir. 1997); *United States v. Chatman*, 994 F.2d 1510, 1516 (10th Cir. 1993). Whether Bedford's conduct in the instant case constitutes willful obstruction in violation of U.S.S.G. § 3C1.1 is a mixed question of law and fact. Therefore, we review for clear error as well as interpret the nature and scope of the Guidelines.

## I. Willful Obstruction

Bedford first contends that his conduct in eating the evidence was not "willful obstruction" but was instead "attempting to swallow" a controlled substance contemporaneously with arrest within the meaning of Application Note 4(d) of the

Commentary to U.S.S.G. § 3C1.1.  Although not clearly stated, Bedford appears to be making two separate arguments here.  The first argument is that his eating of the evidence is specifically excepted by the "attempting to swallow" example of Application Note 4(d).  The second argument is that his conduct occurred contemporaneously with arrest and, therefore, is excepted conduct within the meaning of Application Note 4(d).  We address these two arguments in turn.

**A.  Whether Bedford's eating of the evidence is the same as "attempting to swallow" under Application Note 4(d).**

U.S.S.G. § 3C1.1, entitled Obstructing or Impeding the Administration of  Justice, provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

Application Note 4(d) of the Commentary to U.S.S.G. § 3C1.1 includes as examples of obstructive conduct "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . ., or attempting to do so."  U.S.S.G. § 3C1.1 cmt. n.4(d).  Bedford in this case destroyed some of the evidence, or at least attempted to destroy the evidence, by eating the evidence when he was pulled over by the police.  Thus, ordinarily, his conduct falls within the kind of examples provided by Application Note 4(d).

Bedford asserts that his conduct is the same as "attempting to swallow" a controlled substance within the meaning of Application Note 4(d). Indeed, the Application Note admits a limited exception for certain conduct directed at concealing or destroying, which occurs contemporaneously with arrest: "if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." U.S.S.G. § 3C1.1 cmt. n.4(d). However, the examples provided by the Sentencing Commission indicate that the Commission intended for this specific exception to apply only to attempts at obstruction.[3]

---

[3] Based on the examples provided, we read the exception in Application Note 4(d) to apply only to attempts – acts of conduct that are unsuccessful, uncompleted, or not fully realized – that occur contemporaneously with arrest. *See Black's Law Dictionary*, 4th Ed. Rev. 1978 (Defining criminal attempt as "an effort or endeavor to accomplish a crime, amounting to more than mere preparation or planning for it, which, if not prevented, would have resulted in the full consummation of the act attempted, but which, in fact, does not bring to pass the party's ultimate design.").

We do not think that the Sentencing Commission in excepting attempting to swallow from obstructive conduct in Application Note 4(d) also intended to except actual, successful swallowing of the evidence, especially where the police are unaware that the conduct occurred. *See* U.S.S.G. § 3C1.1 cmt. n.3 ("Obstructive conduct can vary widely in nature, degree of planning, and seriousness. . . . Although the conduct to which this adjustment applies is not subject to precise definition, comparison of the examples set forth in Application Notes 4 and 5 should assist the court in determining whether application of this adjustment is warranted in a particular case."). Bedford fully realized his ultimate design in this case and the police would not have known that he had cocaine with him had he not later vomited at the station. Therefore, his conduct went beyond attempt.

The record in this case shows that Bedford's conduct went beyond mere attempt. Bedford succeeded in swallowing the cocaine base, at a time when the police had no knowledge that he was in possession of incriminating evidence. Had he not later vomited at the police station, the police would not have known that he had cocaine base with him when he was arrested with his co-defendant. Indeed, he might even have denied being in possession of any cocaine. Because Bedford fully realized his ultimate design – he concealed the evidence by successfully swallowing it – his conduct is not the same as "attempting to swallow" within the meaning of Application Note 4(d).

**B. Whether Bedford's obstructive conduct occurred contemporaneously with arrest.**

The second part of Bedford's first argument is that his conduct is not "willful obstruction" because it occurred contemporaneously with arrest. As mentioned above, Application Note 4(d) provides a limited exception for conduct occurring contemporaneously with arrest. But, this exception is meant to include "conduct admitting a spontaneous or visceral or reflexive response occurring at the point arrest becomes imminent." *United States v. Lamere*, 980 F.2d 506, 515, n6 (8th Cir. 1992). Here, Bedford stipulated in the plea agreement that he knew that if the police discovered crack cocaine on his person, his state probation probably would be revoked, and that he ate the crack cocaine "in order to prevent the officers from finding the crack cocaine." ROA, Vol. I, Doc 89. As another court has stated, in order for the "willful obstruction"

provision of U.S.S.G. § 3C1.1 to apply, the defendant must "consciously act with the purpose of obstructing justice." *United States v. Massey*, ___F.3d___, 2006 WL 723449, *4 (11th Cir. 2006); *United States v. Revel*, 971 F.2d 656, 661 (11th Cir. 1992); *United States v. Burton*, 933 F.2d 916, 918 (11th Cir.1991) (citing *United States v. Garcia*, 909 F.2d 389, 392 (9th Cir. 1990)). Bedford's admission indicates that he acted consciously, rather than spontaneously or reflexively, with the purpose of obstructing justice.

There is another reason for concluding that Bedford's conduct in this case was not spontaneous or reflexive. The record shows that Bedford, after he vomited at the police station, attempted to conceal the white matter that he vomited by wiping it up with a red garment he was wearing. The conduct demonstrates his determination to conceal the evidence from the police. It reflects a deliberate action rather than the spontaneous or reflexive conduct which occurs at the point when arrest becomes imminent, excepted by Application Note 4(d). Therefore, even if Bedford's initial conduct in swallowing the evidence occurred contemporaneously with arrest, this later obstructive conduct (wiping up the regurgitated matter) did not occur contemporaneously with arrest because he was already under arrest when it occurred.

Accordingly, the district court did not err in finding that Bedford "willfully" obstructed the administration of justice in this case.

## II. Material Hindrance

Bedford next argues that the government failed to show that his conduct materially

hindered the official investigation or prosecution of the instant offense. As we pointed out above, however, Bedford in any event willfully obstructed the administration of justice by swallowing the evidence and by attempting to conceal the white matter that he regurgitated at the police station. The attempt to conceal the white matter by wiping it up with his red garment did not occur contemporaneously with arrest. Application Note 4(d)'s requirement of "material hindrance" applies only to conduct occurring contemporaneously with arrest. Since Bedford willfully obstructed the administration of justice by attempting to conceal the white matter at the police station, only the first part of Application Note 4(d) applies to his conduct in "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . ., or attempting to do so." U.S.S.G. § 3C1.1, cmt. n.4(d). Therefore, no showing of material hindrance is necessary under such a circumstance.

In any event, the threshold for materiality under U.S.S.G. § 3C1.1 is "conspicuously low." *United States v. Dedeker*, 961 F.2d 164, 167 (11th Cir. 1992); *see also* U.S.S.G. § 3C1.1 cmt. n.6 ("'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."). Under this standard, Bedford's swallowing of the evidence and his attempt to conceal the white matter at the police station were material. It is self-evident that illegal drugs are material to any drug

investigation or prosecution. In addition, sentences are largely determined by the quantity of drugs at stake. Bedford intended to destroy, and he did destroy some, of the most incriminating evidence against him. The fact that he later regurgitated some of the evidence, or that he was unsuccessful in concealing the white matter, is irrelevant. *See United States v. Massey*, ___F.3d___, 2006 WL 723449, *6 (11th Cir. 2006) (The fact that Defendant was unsuccessful in her attempt to conceal the evidence, or even that the concealment was destined to fail is irrelevant.). It was, therefore, not clear error for the district court to find that Bedford's successful swallowing of the evidence materially hindered the official investigation or prosecution of the instant offense.

Accordingly, the sentence of the district court is

AFFIRMED.