**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JENNIFER DARLENE GLASS,

Defendant - Appellant.

No. 05-1328
(D. Ct. No. 04-CR-013-WYD)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, and **KELLY**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-Appellant Jennifer Darlene Glass pleaded guilty to conspiracy to possess with intent to distribute five or more kilograms of cocaine, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(A); conspiracy to possess with intent to distribute fifty or more

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

marijuana plants, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C) and 21 U.S.C. § 856(a)(1) and (b); possession with intent to distribute cocaine and aiding and abetting, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; possession with intent to distribute 3,4-methylenedioxymethamphetamine (commonly known as "ecstasy") and aiding and abetting, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; and, conspiracy to commit money laundering, *see* 18 U.S.C. § 1956(h). Ms. Glass appeals her eighteen-month sentence, arguing that the District Court incorrectly applied the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") when it used U.S.S.G. § 2S1.1(a)(1) rather than § 2S1.1(a)(2) to establish the offense level for the money laundering charge. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we AFFIRM.

## I. BACKGROUND

Following the seizure of cocaine, marijuana plants, and ecstasy from Ms. Glass's home on December 2 and December 19, 2003, a federal grand jury returned a six-count indictment against Ms. Glass and two others—her husband Kenneth Boyd Fife, and William Tompkin Phillips. Ms. Glass was charged in Counts One, Two, Four, Five, and Six. Specifically, Count One charged Ms. Glass with conspiracy to possess with intent to distribute cocaine from January 1998 through December 19, 2003. Count Two charged her with conspiracy to possess with intent to distribute marijuana plants from October 1, 2003 through December 2, 2003. Count Four charged her with possession with intent to distribute cocaine on December 2, 2003. Count Five charged her with possession with

intent to distribute ecstasy on that same day. Finally, Count Six subjected Ms. Glass's property to criminal forfeiture.

Subsequently, the Government filed an information charging Ms. Glass and Mr. Fife with conspiracy to commit money laundering from October 16, 2002 through October 11, 2003. The information alleged that Ms. Glass, Mr. Fife, Mr. Phillips, and others conspired to possess with intent to distribute cocaine, marijuana, and ecstasy; and that part of the conspiracy involved depositing drug proceeds—$67,935—into Ms. Glass's bank account. The controlled substance conspiracy underlying the money laundering, which we will refer to as "Conspiracy X," occurred from the summer of 2000 until December 19, 2003; Ms. Glass was not charged with committing Conspiracy X in either the information or the indictment. Ms. Glass pleaded guilty to all four drug counts in the indictment as well as to laundering the $67,935 as alleged in the information. Significantly, although she was not charged with nor did she plead guilty to participating in Conspiracy X, Ms. Glass admitted to the offense, stating in her plea agreement that the money laundering funds "were proceeds from defendant Fife's drug trafficking in which I was involved."

In the presentence report ("PSR"), the probation officer first calculated the offense level applicable to the drug convictions, which were grouped pursuant to U.S.S.G. §§ 3D1.1 and 3D1.2(d). Because the type and amount of drugs involved equated to 42.521 kilograms of marijuana, the base offense level was 20. *See* U.S.S.G. § 2D1.1(c)(10). The probation officer then added two points because Mr. Fife possessed

a firearm during the commission of the crimes, *see* U.S.S.G. § 2D1.1(b)(1), which produced an offense level of 22.

The probation officer then turned to the money laundering count. Under U.S.S.G. § 2S1.1(a)(1), the base offense level for money laundering is:

> The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined . . . .

U.S.S.G. § 2S1.1(a)(1).

If the two conditions in subsection (a)(1) do not apply, then § 2S1.1(a)(2) instructs that the offense level should be 8 plus upward adjustments based on the amount of the laundered funds. The probation officer determined that the "underlying offense[s]" for the money laundering conviction were Ms. Glass's four drug trafficking and conspiracy convictions, that she was accountable for those offenses under relevant conduct, and therefore the offense level for the underlying offense could be determined—as noted above, it had already been calculated at 22. Because the probation officer found the two conditions in § 2S1.1(a)(1) to apply, the PSR applied that subsection rather than § 2S1.1(a)(2). This produced an offense level of 22, which, after a two-level increase because Ms. Glass was convicted under 18 U.S.C. § 1956, *see* U.S.S.G. § 2S1.1(b)(2)(B), resulted in an offense level of 24.

The probation officer then noted that the four drug offenses required grouping with the money laundering offense under U.S.S.G. § 3D1.2(c). *See* U.S.S.G. § 2S1.1 cmt. n.6.

When counts are grouped under § 3D1.2(c), the court should apply the offense level for the most serious of the counts. U.S.S.G. § 3D1.3(a). In this case, the money laundering count was more serious as it produced an offense level of 24.

After arriving at an offense level of 24, the probation officer subtracted three points for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a) and (b), and three points for Ms. Glass's minor role in the offense, *see* U.S.S.G. § 3B1.2. This produced an offense level of 18, which, coupled with Ms. Glass's criminal history category of I, resulted in an advisory sentencing range of 27–33 months. The probation officer also noted that, per the terms of the plea agreement, the Government anticipated filing a motion for a downward departure of one-third based on substantial assistance, *see* U.S.S.G. § 5K1.1, which would produce a minimum sentence of 18 months.

Ms. Glass objected to the PSR, arguing that she and the Government had stipulated in the plea agreement that U.S.S.G. § 2S1.1(a)(2), rather than (a)(1), should be used to calculate the base offense level. Specifically, she maintained that the "underlying offense" that produced the laundered funds was Conspiracy X described in the information rather than the drug counts alleged in the indictment to which she had pleaded guilty. And, because the Government had not established the quantity of drugs involved in Conspiracy X, Ms. Glass argued that the offense level for that offense could not be determined. *See* U.S.S.G. § 2D1.1(c) (offense level for controlled substance convictions varies according to the amount of the substance involved). Ms. Glass also contended that because Conspiracy X ended prior to the seizure of drugs at her home in

December 2003, those drug quantities could not logically be used as part of the "underlying offense" that produced the laundered money. As a result, Ms. Glass claimed that U.S.S.G. § 2S1.1(a)(1) was inapplicable and that the probation officer should have calculated her sentence by using § 2S1.1(a)(2) instead. This would have produced an advisory sentence of 21–27 months, and a one-third departure for substantial assistance would have resulted in a minimum sentence of 14 months. The Government joined in Ms. Glass's objection.

At the sentencing hearing, the District Court entertained extensive argument on the matter. It ultimately rejected the basis for Ms. Glass's objection, reasoning that Ms. Glass's drug convictions were relevant conduct and should be used in order to determine the sentence for the money laundering conviction. Accordingly, the court agreed with the PSR's determination that the advisory Guidelines range was 27–33 months. It also granted the motion for a one-third departure, sentencing Ms. Glass to 18 months' imprisonment. Ms. Glass subsequently was granted a stay of execution of sentence pending her appeal in which she contests the District Court's application of § 2S1.1(a)(1).[1]

## II. DISCUSSION

We review the District Court's interpretation and application of the Guidelines de novo. *United States v. Bedford*, 446 F.3d 1320, 1324 (10th Cir. 2006). Under U.S.S.G.

---

[1]The Government has since changed its position and filed a brief arguing that the District Court properly applied the Guidelines.

§ 2S1.1(a)(1), the base offense level for a conviction for money laundering is:

> The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined.

In this case, we agree with Ms. Glass that the "underlying offense from which the laundered funds were derived" is Conspiracy X as described in the information. Subsection (a)(1) applies, then, if Ms. Glass was a member of that conspiracy and if the offense level for that conspiracy can be determined. The first condition is clearly met: Ms. Glass admitted in her plea that the laundered funds "were proceeds from defendant Fife's drug trafficking *in which [she] was involved.*" (emphasis added).

Moving to the second condition—whether the offense level for the underlying offense can be determined—it has long been the rule that the base offense level for many controlled substance offenses, including drug trafficking conspiracies like Conspiracy X, hinges on the type and quantity of the substance involved. *See* U.S.S.G. § 2D1.1(c); *United States v. Arias-Santos*, 39 F.3d 1070, 1077 (10th Cir. 1994). Ms. Glass argues that because the Government did not establish the quantity of cocaine, marijuana, and ecstasy trafficked during the course of Conspiracy X, the offense level for Conspiracy X cannot be determined. Therefore, according to Ms. Glass, the District Court should have applied U.S.S.G. § 2S1.1(a)(2), which calculates the base offense level primarily according to the amount of laundered funds rather than the nature of the underlying offense. We disagree.

Although Ms. Glass is correct that the type and quantity of the substance involved

in Conspiracy X informs the calculation of the offense level under § 2D.1.1, she overlooks the fact that it will often be the situation in a drug trafficking case that the government cannot seize and measure all the drugs that flow through the conspiracy. *See United States v. Collado*, 975 F.2d 985, 998 (3d Cir. 1992). In such a case, the sentencing judge is instructed to "approximate the quantity of the controlled substance" by reference to, for example, "the price generally obtained for the controlled substance, financial or other records, [or] similar transactions in controlled substances by the defendant." U.S.S.G. § 2D1.1 cmt. n.12. When, however, it is impossible to determine by a preponderance of the evidence the amount of a controlled substance attributable to a defendant, the sentencing court must "err on the side of caution." *United States v. Davis, 981 F.2d 906, 911 (6th Cir. 1992).* As the Sixth Circuit explained:

> We believe that the guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate. Thus when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution. . . .While this may result in an underestimation of the quantity of drugs involved in some few cases, we believe it is nonetheless constitutionally required to prevent excessive sentences.

*Id.* (alteration in original) (quotation omitted).

In this case, there was no evidence upon which to base an estimation of the amount of drugs involved in Conspiracy X. Instead, the court determined the offense level solely

on the basis of the amount of drugs involved in the four related drug convictions—thereby conservatively attributing *nothing* to Ms. Glass as a result of her role in Conspiracy X. We find no error to this approach. To the contrary, it is clear that the District Court adhered to its duty not to overestimate the drug amount attributable to Ms. Glass as a member of Conspiracy X. *See id.*

Moreover, the District Court properly calculated the offense level by considering the drug amounts in the four counts of conviction because those convictions constitute relevant conduct under U.S.S.G. § 1B1.3(a)(2). Relevant conduct—considered to be the most important component of the Sentencing Guidelines, *see* William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C. L. Rev. 495 (1990)—plays a significant role in drug trafficking offenses like Conspiracy X. Specifically, in calculating the quantity of drugs involved in an offense to which U.S.S.G. § 2D1.1 applies, "a sentencing court . . . should consider all quantities stemming from a defendant's relevant conduct'" as described in U.S.S.G. §1B1.3(a)(2)). *United States v. Clark*, 415 F.3d 1234, 1240 (10th Cir. 2005). Indeed, the commentary to § 2D1.1 specifically instructs that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct).") § 2D1.1 cmt. n.12.[2]

_____

[2]At this point, we pause to emphasize the highly unusual nature of this case. Conspiracy X, although the "underlying offense" that generated the laundered funds, is not an offense that Ms. Glass was convicted of committing. Conversely, she *was* convicted of the four drug offenses—offenses which we now deem relevant conduct. In this way, this appeal presents the opposite scenario from that which often arises with

In order for an offense to be relevant, and therefore attributable to a defendant for sentencing purposes under § 1B1.3(a)(2), three prerequisites must be met:

> First, there must be a finding that the offense in question involved conduct described in §§ 1B1.3(a)(1)(A) and (B).  Second, the offense must be the type of offense that, if the defendant had been convicted of both offenses, would require grouping with the offense of conviction for sentencing purposes under U.S.S.G. § 3D1.2(d).  Third, the offense must have been "part of the same course of conduct or common scheme or plan [as the offense of conviction.]" U.S.S.G. § 1B1.3(a)(2).

*United States v. Taylor*, 97 F.3d 1360, 1363 (10th Cir.1996).

With regard to the first prerequisite, the conduct described in U.S.S.G. § 1B1.3(a)(1)(A) and (B) is as follows:

> (A) acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . .

U.S.S.G. § 1B1.3(a)(1)(A) and (B).  Ms. Glass pleaded guilty to the four drug counts in the indictment.  Accordingly, that conduct falls squarely within § 1B1.3(a)(1)(A) as an act committed by the defendant.

With regard to the second prerequisite, counts are to be grouped under § 3D1.2(d)

respect to the application of § 1B1.3(a)(2).  *See, e.g., United States v. Hauk*, 412 F.3d 1179, 1195 (10th Cir. 2005) (noting that *uncharged* drug quantities constitute relevant conduct).  Nevertheless, we find that § 1B1.3(a)(2) applies in this case as well.  Because § 2S1.1(a)(1) does not distinguish between a situation in which the defendant committed the underlying offense and one in which the defendant was convicted of the underlying offense, we conclude it is appropriate to consider relevant conduct in determining the offense level in both situations.

when each count's "offense level is determined largely on the basis of . . . the quantity of a substance involved." U.S.S.G. § 3D1.2(d). Had Ms. Glass been convicted of Conspiracy X, a drug trafficking conspiracy, it would have required grouping with her four other drug convictions since all the offenses are of the "same general type," and the offense level for each count is largely determined by the type and quantity of drugs involved. *See Taylor*, 97 F.3d at 1364 (stating that counts must be grouped under § 3D1.2(d) when they are of the "same general type" and the base offense level for each is calculated based on the quantity of substance involved under § 2D1.1); *see also United States v. Ray*, 147 Fed. App'x 32, 35 (10th Cir. 2005) (noting that the district court grouped charges of conspiring to possess with intent to distribute and possession with intent to distribute under § 3D1.2(d)). Indeed, the Guidelines explicitly contemplate the grouping of counts governed by § 2D1.1. *See* U.S.S.G. § 3D1.2(d).

Finally, whether offenses form the same course of conduct, "depends on 'the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.'" *Clark*, 415 F.3d at 1240 (quoting U.S.S.G. § 1B1.3 cmt. n.9(B)). We have no trouble concluding that the four drug offenses were part of the same course of conduct as Conspiracy X. The four drug offenses to which Ms. Glass pleaded guilty, like Conspiracy X, involved cocaine, marijuana, and ecstasy. Each offense centered on the same three players: Ms. Glass, Mr. Fife, and Mr. Phillips. Each offense occurred during the same five-year period, and each offense overlapped temporally with at least one other offense. Given the striking similarity among all the

offenses, the District Court properly considered the quantity of drugs stemming from the four counts of conviction in order to determine the offense level for Conspiracy X. Moreover, because the full computed offense level include specific offense characteristics, which are also determined based upon relevant conduct, *see* U.S.S.G. § 1B1.3, the District Court properly included a two-level enhancement for Mr. Fife's possession of a firearm during the commission of the related drug crimes, *see* U.S.S.G. § 2D1.1(b)(1). Because the offense level for the underlying offense can be calculated, the District Court properly applied § 2S1.1(a)(1) rather than (a)(2).

In reaching our conclusion, we note that the application of § 2S1.1(a)(1) rather than (a)(2) is also consistent with the purpose of the Guidelines. Prior to 2001, § 2S1.1 set the base offense level for all money launderers according to the amount of funds laundered. *See* U.S.S.G. § 2S1.1 (2000). That year, however, it was amended to its present form in order to distinguish between "direct money launderers" and "third party launderers." U.S.S.G. Supp. to App. C, Amend. 634, at 227–28 (2002). Direct money launderers are those who also commit the crime that produces the illicit funds, whereas third party launderers have no involvement in the underlying offense—they only launder the money generated from that offense. *Id.* at 228. Section 2S1.1(a)(1), which often produces a higher sentence than subsection (a)(2), was intended to apply to direct money launderers; subsection (a)(2) was intended to apply to less-culpable third-party launderers. *Id.* Ms. Glass, an admitted participant in the offense that produced the laundered funds, is a direct money launderer and should be sentenced according to the

mandates of subsection (a)(1) rather than the more lenient instructions contained in (a)(2). Indeed, this Court is aware of no case—from this Circuit or otherwise—in which the defendant admitted to committing or was convicted of the underlying offense yet was sentenced under § 2S1.1(a)(2).

## III. CONCLUSION

Because Ms. Glass admitted to participating in the cocaine, marijuana, and ecstasy trafficking that spawned her conviction for money laundering and because the offense level for that offense can be determined, the District Court properly applied § 2S1.1(a)(1) rather than (a)(2). We therefore AFFIRM Ms. Glass's sentence.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge