**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 11, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WENDEL ROBERT WARDELL, JR.,

Defendant-Appellant.

No. 05-1492

(D. of Colo.)

(D.C. No. 03-CR-415-REB)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.[**]

   While incarcerated in a Colorado state prison, Wendel R. Wardell and other

prisoners engaged in a scheme to obtain fraudulent tax refunds by submitting

false tax returns.  The scheme involved submitting false tax returns in their own

names, and in the names of other inmates, to obtain refunds to which they were

not entitled.  Wardell was eventually convicted of seventeen counts of tax fraud

---

[*]    This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec.
1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

[**]    After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G).  The cause is therefore ordered submitted without oral argument.

and one count of conspiracy. The district court sentenced him to a total of ninety-six months imprisonment: (1) sixty months for the conspiracy charge, and (2) thirty-six months for each tax fraud count, each to be served concurrently. On appeal, Wardell challenges three sentence enhancements applied by the district court: (1) the use of sophisticated means to commit the crimes; (2) Wardell's role as a leader or organizer; and (3) Wardell's obstruction of justice by submitting a false document during the prosecution.

We affirm.

## I. Background

On August 20, 2003, Wardell was indicted on 20 counts related to tax fraud: (1) one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 371; (2) four counts of making false statements in tax returns, in violation of 26 U.S.C. § 7206(1); and (3) fifteen counts of aiding and assisting the presentation of false tax returns, in violation of 26 U.S.C. § 7206(2). Carl W. Pursley, Jr., a fellow prisoner, was also indicted on the conspiracy charge and two counts of aiding and assisting the preparation of false tax returns.

After a jury trial, Wardell was acquitted on two counts of presenting false tax returns and was convicted on the remaining eighteen counts. Pursley, who was tried at the same time, was convicted of three counts brought against him.[1]

_____

[1] Pursley separately appealed his conviction, which we affirmed in *United States v. Pursley*, 05-1428.

Prior to the court's sentencing hearing, the probation department filed a presentence report (PSR) and addendum with the district court. Based upon an intended tax loss to the Internal Revenue Service of $74,916, the PSR computed a base offense level of 14. The PSR also recommended three enhancements: (1) a two-level enhancement because the offense involved "sophisticated means," USSG § 2T1.4(b)(2) (2004); (2) a two-level enhancement because the defendant was a leader of the criminal activity, *id.* at § 3B1.1(c); and (3) a two-level enhancement for obstruction of justice, *id.* at § 3C1.1. The adjustments yielded a total offense level of 20. Based upon the 30 criminal history points, the PSR concluded the defendant was in criminal history category VI, with a resulting imprisonment range of 70–87 months. Wardell objected to the three enhancements. The government responded by citing trial evidence that supported the enhancements.

At sentencing, the district court adopted the PSR's recommendations. Addressing Wardell's criminal history, the court found that he "has adopted and cultivated essentially a philosophy characterized by a life of crime, involving fraudulent behavior of many kinds, evincing, frankly, a total disrespect for the law and an absolute disregard for the rights and property of others." ROA, vol X, at 36. The court noted Wardell's criminal record was "so extensive that it earns criminal history points of 30, which is essentially off the chart for purpose of the

Federal Sentencing Guidelines." *Id.* The court concluded that it was appropriate to impose the maximum sentences permitted by law.

In justifying its sentence, the court considered the sentencing factors set in 18 U.S.C. § 3553(a)(1)–(7) and the applicable advisory Sentencing Guidelines. On the conspiracy conviction, the court sentenced Wardell to sixty months imprisonment, the statutory maximum. On the seventeen convictions for making or assisting in the making of false tax returns, the court sentenced Wardell to thirty-six months on each count to be served concurrently, but consecutive to the conspiracy conviction, yielding a total sentence of ninety-six months imprisonment.

## II. Analysis

Wardell challenges the district court's upward adjustment of his sentence based on the three sentencing enhancements. Since *United States v. Booker*, 543 U.S. 220 (2005), we review sentence calculations made pursuant to applicable advisory Guidelines for reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). Reasonableness is presumed if "the district court considered the applicable Guidelines range" and "sentences the defendant within that range." *Id.* at 1055. In assessing the Guidelines' application, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *Id.* at 1054. We examine each enhancement in turn.

### A. Sophisticated Means

The Guidelines provide for a two-level sentence enhancement when "sophisticated means" are used to conceal the tax offense. USSG § 2T1.4(b)(2) (2004). The commentary to the Guidelines defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* at § 2T1.4(b)(2) cmt. n.3. The district court imposed this enhancement after agreeing with the government's contention that this was not a routine tax evasion case.

Wardell argues that defining this tax fraud scheme as complex or intricate would make virtually every fraudulent tax return eligible for the sophisticated means enhancement. He suggests that because his scheme lacked shell corporations, offshore accounts, dummy boards of directors, blind paper trails, or multi-national transactions (in addition to the fact that his actions were patently detectable), his tax scheme was routine and conventional. Based on the applicable precedents, we disagree.

To begin with, Wardell's fraudulent conduct was not a garden variety fraud. His was not simply a case of claiming to have paid withholding taxes not paid, *United States v. Rice*, 52. F.3d 843, 849 (10th Cir. 1995), or of not disclosing income to one's accountant, *United States v. Stokes*, 998 F.2d 279, 281–283 (5th Cir. 1993), two situations where courts have overturned sophisticated means enhancements. Instead, Wardell's conduct reflects a much more elaborate scheme.

Wardell was incarcerated in a state prison. Nonetheless, he was able to use numerous individuals and fictitious entities, addresses, and paperwork to create the illusion that he earned income and was entitled to multiple tax refunds. He filed a large number of false returns in the names of inmates without their knowledge, used false addresses outside of the Colorado prison system, and intentionally mislabeled his mail as "legal mail" in order avoid detection.[2] Wardell also sent false returns to multiple IRS service centers around the country, created and used false W-2 Forms and other paperwork to legitimize his and Pursley's claims. He conspired with other inmates to further the scheme.

Wardell's conduct fits well within our precedent applying the enhancement. *See, e.g., United States v. Guidry,* 199 F.3d 1150, 1159 (10th Cir. 1999) (defendant had fraudulent checks made payable to a bank, not her, to avoid detection; structured transactions to avoid filing of currency reports; and stashed valuable clothes and jewelry in multiple storage units); *United States v. Ambort*, 405 F.3d 1109, 1120 (10th Cir. 2005) (defendant offered tax seminars on how to avoid making tax returns easily traceable by withholding a proper address and social security numbers).

We find Wardell's fallback argument equally unpersuasive. He contends that since he deposited the refund checks into his own account which were easily

---

[2] While prison authorities normally open and scan ordinary outgoing mail, "legal mail" is unopened by the Colorado Department of Corrections.

traceable, his scheme was simplistic and easily detectable, negating a finding of sophisticated means. Again, we disagree. His tax scheme was far "more complex or demonstrates greater intricacy or planning than a routine tax-evasion case," *Ambort*, 405 F.3d at 1120 (quoting USSG § 2T1.1(b)(2) (1991)), fitting well within the type of conduct targeted by the enhancement.

In sum, the district court did not err in applying the sophisticated means enhancement.

## B. Leadership Role

Wardell's next argument is that the district court erred in making a two-level enhancement for his role as "an organizer, leader, manager, or supervisor in any criminal activity." USSG § 3B1.1 (2004). According to the adopted findings of the court, Wardell "supplied the addresses and W-2s used to perpetrate the fraud, filled out the false returns, recruited Jessie Cluff and likely Carl Pursley, and appeared likely to receive the bulk of the refunds associated with the refunds filed in the names of other inmates." Government's Sentencing Statement at 12. Wardell challenges both these factual findings and whether the findings support an enhancement under § 3B1.1.

Under the clear error standard, we affirm the district court's findings of fact. The record indicates that two witnesses identified Wardell's handwriting on Pursley's 1040 forms, revealing that Wardell filled out the tax forms in the scheme. Furthermore, Pursley's fraudulent W-2 forms claim income from

Cimarron Farms, a farm purportedly owned by Wardell. Pursley would not have known this information had Wardell not supplied it. While this evidence does not prove that Wardell recruited Pursley for the criminal enterprise, it does lead to the inference that Wardell played an organizing role as far as Pursley was concerned.

Jessie Cluff also testified at trial that he received direction from Wardell in submitting his fraudulent tax return. Cluff testified that Wardell initiated their conversations about obtaining tax refunds, and Cluff later agreed to submit tax forms in his own name. He indicated that he signed his tax forms *before* Wardell prepared them in Cluff's name, and that they claimed income from Cimarron Farms, again an enterprise only knowable through Wardell. Cluff also testified that the explanation section of his tax return was prepared by Wardell. According to Cluff, he and Wardell agreed that if a refund was received that Wardell would receive half of the proceeds. This testimony strongly supports the conclusion that Wardell recruited Cluff into this tax scheme.

Taken together, we agree that the district court was justified in finding Wardell to be an "organizer" of the tax fraud scheme. Wardell supplied the addresses, information, and tax forms to the enterprise. He recruited others to participate in the scheme and received a larger share of the proceeds. Wardell's role in this case fits comfortably with cases which have upheld a § 3B1.1(c) enhancement. *See, e.g., United States v. Valdez-Arieta,* 127 F.3d 1267, 1272 (10th Cir. 1997) (arranging the drug supply, directing the time and place of the

delivery of the drugs, and deciding the financial arrangement was sufficient for a § 3B1.1(c) enhancement); *United States v. Billingsley*, 115 F.3d 458, 465 (7th Cir. 1997) (devising scheme, recruiting accomplices, serving as main participant in offense, and receiving largest share of benefit of criminal enterprise qualified defendant as an organizer under § 3B1.1(c)); *United States v. Giraldo*, 111 F.3d 21, 24 (5th Cir. 1997) (recruiting accomplices and providing money necessary for a drug transaction constitutes acting as an organizer under § 3B1.1(c)).

Wardell contends that because Cluff engaged in some action independent of him that he could not have served as an "organizer" of the operation. Yet absolute dominion over subordinates is not a requirement of a § 3B1.1(c) enhancement. *Valdez-Arieta*, 127 F.3d at 1272 ("[A] defendant may be punished as an organizer under § 3B1.1(c) for devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy even though the defendant may not have any hierarchical control over the other participants.").

Considering this record, we find that the district court's findings under this enhancement was not "without factual support in the record, . . . [nor are we] left with the definite and firm conviction that a mistake has been made." *United States v. Mandilakis,* 23 F.3d 278, 280 (10th Cir. 1994) (stating the criterion to reverse a district court's finding under the clearly erroneous standard). Accordingly, the district court did not err in applying this enhancement.

## C. Obstruction of Justice

Wardell's last argument is that the enhancement for obstruction of justice was not warranted. According to the Guidelines, this enhancement is appropriate if "(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instance offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." USSG § 3C1.1 (2004).

This final enhancement stems from Wardell's *pro se* motion in limine to exclude any references at trial to his association with the Aryan Brotherhood. He attached to his motion an internet article describing himself as "an Aryan Brother assoc." and Pursley as a "suspected top general of the Aryan Brotherhood." The article mentioned that both were being indicted for tax fraud. It was subsequently determined that the article had been altered to include the reference to the two defendants. In an affidavit from IRS Special Agent Arleta Moon, the government showed that the article attached to Wardell's motion was changed to contain false, additional language when compared to the original internet article. Furthermore, the article's dateline was 2002, a patent error given that Wardell's and Purlsey's indictments did not occur until 2003.

At sentencing, Wardell's defense counsel conceded that the article was false, but argued that Wardell did not willfully submit the misinformation. First,

his counsel contended that Wardell had no access to computer equipment to manufacture the false article and that Wardell might have felt that the 2002 date was a typographical error. In fact, Wardell changed the date of the article to "200[3]" in his motion in limine to emphasize the problematic date of the article.

In making its determination, the district court expressly adopted the government's findings and legal analysis from (1) the PSR, and (2) arguments made at Wardell's sentencing hearing. Accordingly, we treat the government's findings as the court's own. *See United States v. Laury*, 985 F.2d 1293, 1308 n.18 (5th Cir. 1993). The court appeared to rely heavily on the government's contention that Wardell's submission of the article,

> merits applying the obstruction of justice enhancement because it is substantially similar to several examples listed in the commentary to U.S.S.G. §3C1.1, including committing perjury, *id.* §3C1.1, App. N.4(b), producing a false or altered document during a judicial proceeding, *id.* §3C1.1, App. N. 4[(c)], and providing materially false information to a judge, *id.* §3C1.1, App. N. 4(f).

Second Addendum, PSR.

And at the sentencing hearing, responding to the argument that Wardell did not willfully submit the altered article, counsel for the government contended:

> The argument . . . from the defense that this [enhancement] shouldn't apply is that . . . this was simply a mistake. That Mr. Wardell didn't realize that this document had been altered, and was submitting it in good faith.

And the government does take the position described already by [Wardell's defense counsel], that the fact that in the text of his motion, that Mr. Wardell had noticed the discrepancy in the date and changed it within the text of his motion to eliminate the impossibility that otherwise existed with respect to that added text, shows that Mr. Wardell knew, or at a minimum should have known, that there was something wrong with this document and that it was not a document that he should have been submitting with the intent that the court rely on it in ruling on a motion he had made to the court. . . .

[T]he government does argue that in considering what Mr. Wardell's state of mind was at the time this altered document was submitted, that it is relevant for the court to consider that, on previous occasions, Mr. Wardell had taken efforts to try to prevent the discovery of accurate information from the government with respect to . . . the activities he had been engaged in, not just the various efforts he had taken during the course of the scheme to prevent its discovery, but the efforts he took after he became aware that he was under investigation to keep the truth from being known to the government, such as him telling Mr. Cluff to keep his mouth shut when any investigators came to talk to him.[3]

ROA, vol. X at 24–25. Sentencing Hearing Transcript 24–25.

For the "willful obstruction" provision of USSG § 3C1.1 to apply, we have held that "the defendant must consciously act with the purpose of obstructing justice." *United States v. Bedford*, 446 F.3d 1320, 1325 (10th Cir. 2006) (internal quotations omitted). Accordingly, if Wardell knowingly submitted the altered article to influence the court's proceedings, then this requirement is satisfied.

---

[3] In the government's sentencing statement, it alleged that Wardell attempted to prevent Cluff from talking to government investigators. [Gov't Sentencing Statement, PSR at 12.]. The government conceded that this would not be enough to support an independent enhancement for obstruction of justice.

The district court's adopted findings on this enhancement, while not detailed, supports a conclusion that Wardell knew or should have known that the article's authenticity was suspect, and that he submitted it to the court in order to deceive it.

The government produced no evidence to show how Wardell manufactured or obtained the false document. Circumstantial evidence, however, shows his knowledge of the document's falsity. The government's affidavit demonstrates that the article clearly does not appear on the internet in the form presented by Wardell and that the date on the article was a full year before his indictment (a fact obviously known to Wardell because of the bracketing in his motion). As Wardell's defense counsel argued at sentencing, only two possible explanations exist: (1) Wardell knew that the article was altered and attempted to cover up the alteration by changing the "2002" to "200[3]" in his motion in limine, or (2) Wardell thought the date was a typographical error and simply intended to correct it in his motion. The district court chose to believe the former theory and Wardell offers no compelling reason to overturn that decision. For the reasons articulated in the district court's adopted findings, we hold that the district court's determination that Wardell's conduct was "willful" under § 3C1.1 was not clearly erroneous.

Wardell argues that the altered article was immaterial to the case and does not warrant an obstruction of justice enhancement. Although "the threshold for

materiality under USSG. § 3C1.1 is conspicuously low," *Bedford*, 446 F.3d at 1326 (internal quotations omitted), we agree that some question exists as to the materiality of the document because of the lack of district court findings. In this case, the purpose of the motion in limine was to exclude any reference to Pursley's and Wardell's Aryan Brotherhood or racist ties. Without more, it is not self-evident to us that an article naming Wardell as a member of the Aryan Brotherhood would have affected the disposition of this motion. Reference to Wardell's and Pursley's Aryan affiliation would be seemingly irrelevant to the prosecution of the case whether or not Wardell's name appeared in an obscure article. *But cf. United States v. Hernandez-Ramirez*, 254 F.3d 841, 843–44 (9th Cir. 2001) (holding that a false affidavit submitted to a magistrate judge was material whether or not it affected the judge's decision).

Nevertheless, considering the multiple, cumulative grounds on which the district court based this enhancement, we find no error. In contrast to other types of obstructive conduct listed in the Guidelines, the submission of false or altered documents (Note 4(c)) does not contain any qualifier that the documents *materially* mislead federal authorities. While we can only speculate as to the Guidelines' purpose in the incongruent treatment of a false *statement* to a judge under Note 4(f) (requiring materiality) and a false *document* to a judge under Note 4(c), we see no reason to wander from the plain text of the Guidelines. Accordingly, since Wardell's conduct plainly fits into the fact pattern

contemplated under Note 4(c) of the Guidelines, we affirm the district court's obstruction of justice enhancement.

### III. Conclusion

For the foregoing reasons, we affirm Wardell's sentence.[4]

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[4] Wardell's appointed counsel, Mark D. Jarmie, filed a motion to withdraw as his appellate counsel. We hereby grant the motion. Mr. Wardell filed a pro se combined motion on July 24, 2006, and two further pro se motions on August 31, 2006 and September 18, 2006. We deny those three motions. To the extent that Wardell asks that Judge Tymkovich recuse himself from this case based on his service as Colorado's solicitor general during Wardell's initial state convictions, Judge Tymkovich has reviewed the matter and has determined that no conflict exists. The request is denied.